562 A.2d 285

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Derrick RUSH, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 28, 1988.

Decided July 10, 1989.

380

Paul J. Downey, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Suzan Willcox, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

NIX, Chief Justice.

After a bench trial, Derrick Rush was convicted of aggravated assault, criminal conspiracy, reckless endangerment, possession of an instrument of crime and a violation of the Uniform Firearms Act. He was sentenced by the Honorable Sandra Mazer Moss to five to ten years' imprisonment, consistent with the prescribed mandatory minimum sentencing for crimes committed with a handgun, and a consecutive five-year period of probation.

Appellant challenges his conviction and judgment of sentence on two grounds: that he was improperly certified for trial as an adult; and, that the lower court improperly denied his lineup request and admitted defective identification testimony. The Superior Court, in an unpublished memorandum opinion, 368 Pa.Super. 643, 531 A.2d 35 (1987), found these contentions to be without merit. We affirm.

The events which led to Derrick Rush's trial and conviction in this matter occurred on a Sunday evening at the Belmont Plateau in Fairmount Park in Philadelphia. The park was hosting a free "Rap Music" concert, attended by several hundred youths. At approximately 7:30 p.m. violence erupted near the refreshment stand. Two gangs of youths, who had a previous altercation a few days earlier, began to fight. The fight escalated into the firing of shots by a youth later identified as Derrick Rush. Two teenagers were injured in the shooting. Joseph Gilliard, sixteen years of age, was shot in the ankle. A fourteen year old girl, Charlene Tyson, was shot in the abdomen, colon and spleen,

the bullet ultimately coming to rest in an inoperable position near her spine. Miss Tyson's injuries required a temporary colostomy bag and two serious operations.

Two eyewitnesses, Joseph Ellis and Michael Clark, in addition to Mr. Gilliard, identified the appellant as the shooter from a police photo book. The witnesses also identified another youth, Robert Ravenell, as an accomplice of appellant's. Derrick Rush was arrested at his grandmother's home, where he was found asleep on the sofa, with a small caliber gun hidden under the cushion.

At the preliminary hearing, the court found sufficient evidence existed to hold appellant over for trial. An amenability hearing was held to determine whether appellant, who was sixteen years, eleven months old, should be certified as an adult for trial.

I.

The legislature promulgated the Juvenile Act, 42 Pa.C.S. § 6301 et seq., as regards delinquent behavior of minors, for the purpose of treating, supervising, rehabilitating and caring for children in a manner apart from the adult criminal system. The Act provides that one who is fourteen years or older, who commits a delinquent act that would be a felony if committed by an adult, may be tried as an adult, if the court finds that he or she is not amenable to treatment in the juvenile system.

The certifying court must determine if the evidence presented demonstrates:

(i) that there is a prima facie case that the child committed the delinquent act alleged;

(ii) that the delinquent act would be considered a felony if committed by an adult; and

(iii) that there are reasonable grounds to believe all of the following:

(A) That the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, even though there may not have been a

prior adjudication of delinquency. In determining this the court shall consider the following factors:

Age.

Mental capacity.

The degree of criminal sophistication exhibited by the child.

Previous records, if any.

The nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the Juvenile Court to rehabilitate the child.

Whether the child can be rehabilitated prior to the expiration of the Juvenile Court jurisdiction.

Probation or institutional reports, if any.

The nature and circumstances of the acts for which the transfer is sought.

Any other relevant factors.

(B) That the child is not committable to an institution for the mentally retarded or mentally ill.

(C) That the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult.

42 Pa.C.S. § 6355(a)(4).

If the court finds that the evidence has established that the child is not amenable to treatment in the juvenile system, then the matter will be transferred to the adult system.

In *Commonwealth v. Greiner*, 479 Pa. 364, 388 A.2d 698 (1978), we concluded that the Juvenile Act mandates that whenever possible its provisions should control and that the errant juvenile would be best supervised, directed and rehabilitated under the provisions of that Act. Thus the burden falls upon the Commonwealth to establish that the statutory prerequisite for transfer of jurisdiction to the adult criminal division of the court has been met. Such a finding demonstrates that the juvenile would not be amenable to the purpose that the Juvenile Act was designed to achieve. As we stated in *Greiner:*

The basic question presented is one requiring a determination as to the appropriate forum for the resolution of a dispute of this nature. By the new Juvenile Act, the legislature has, in no uncertain terms, made it clear that whenever possible its provisions should control in resolving matters pertaining to juveniles. While the Act envisions instances where its provisions would be inadequate and the more drastic remedies of the criminal court must be employed, it is equally clear that the preference was to treat the juvenile delinquent, whenever possible, in accordance with the procedures specially designed for the juvenile offender. In essence, the Act creates a presumption that the errant juvenile can best be supervised, directed and rehabilitated under its provisions absent evidence to the contrary. It therefore follows that the party raising the objection to the juvenile court's jurisdiction must shoulder the burden of presenting evidence to establish those facts which would warrant the conclusion that in a given case the provisions of the Act are inappropriate. To hold otherwise would create the anomalous situation whereby the party in whose favor a legislative presumption has been created is called upon to offer the evidence to support the presumption. Such a concept would be at variance with the well established principle of the law of evidence that a presumption shifts not only the burden of proof, but also shifts the burden of coming forward with the evidence to establish the fact in issue. *See generally,* McCormick on Evidence, §§ 342–43 (2d Ed.1972); 9 Wigmore on Evidence, §§ 2490–91 (3d Ed. 1940). (Footnote omitted.)

*Commonwealth v. Greiner,* at 370–71, 388 A.2d at 701–02 (1978).

Therefore, we must review this record to determine whether or not the Commonwealth has sustained its burden in demonstrating that Derrick Rush was indeed not amenable to the purposes of the Act and, therefore, was properly

tried as an adult.[1]

■ Appellant contends that the Commonwealth did not meet its burden of proof at the certification hearing since it presented no live testimony, relying instead on the notes of testimony from the preliminary hearing, and on appellant's "J-file"[2] and school record. Appellant further contends that this Court should find that the lower court abused its discretion in certifying him because the evidence was insufficient to support a finding of nonamenability.

After a careful review of the record, we are convinced that this contention is meritless. At the hearing the Commonwealth offered the evidence of appellant's "J-file" which consisted of his prior record and probation reports. Appellant had been arrested for burglary and adjudged delinquent in March 1985, just five months before the incident at the park. He was sentenced to probation on March 6, 1985.

The record reveals that appellant and several other youths broke into a residence that was secured with a burglar alarm. Once inside, the youths disarmed the alarm and ransacked the home. Upon the arrival of the police, the youths scattered. Appellant was apprehended while hiding in the second floor of the home. The disposition of this incident resulted in the probation appellant was serving at the time of the instant adjudication. His school records reflect that during the probationary period appellant was absent from school at least fifty days. The probation began in March and the school term ended in June. The probation reports indicate that appellant lacked respect for authority and had a negative attitude, which did not improve during the period of probation preceding the instant adjudication.

1. This Court has held that a finding that a juvenile is not amenable to the Act's purposes will not be disturbed on review, absent an abuse of discretion. *Commonwealth v. Wade,* 485 Pa. 453, 402 A.2d 1360 (1979). Such an abuse of discretion is more than error in judgment. It is the misapplication of law, the exercise of unreasonable judgment, or a decision based on ill will, bias or prejudice. *Wade, supra.*

2. The term "J-file" refers to a juvenile's file which includes arrest records, probation reports, psychiatric reports, as well as any other court records regarding the juvenile.

This record and the notes of testimony from the preliminary hearing were presented to the court during the certification hearing. We find that the Commonwealth met its burden of proof and that the evidence presented was sufficient to establish the nonamenability of appellant. *See Greiner, supra.* Based on the evidence presented, it is clear that the certifying court did not abuse its discretion in finding that appellant was not amenable to treatment in the juvenile system. The court noted that Derrick Rush had been under the care and supervision of the juvenile system for almost six months prior to the shooting, and that during that time, the probation reports demonstrated that appellant's attitude and behavior did not improve, and, in fact, worsened. In light of the severity of the crimes committed and the firm identifications of Derrick Rush by the witnesses and victim, we find no error in the court's decision to transfer this matter to the adult court system. We note that all the statutory factors were properly considered by the court, including the practical considerations of the need for legal restraint and the limited amount of time during which appellant could be supervised in the juvenile system.

## II.

■ Appellant's second challenge to his conviction is a complaint that he was illegally denied a requested lineup. Although appellant argues several other identification issues in his brief, those claims were not raised by appellant in his Petition for Allowance of Appeal.[3] Therefore, those

3. In his Petition for Allowance of Appeal appellant raised only the following questions:

I. Where the legislature has mandated specific criteria to be considered in deciding whether or not to certify a juvenile for trial as an adult, may the Commonwealth omit the submission of any evidence whatsoever on those factors, and have certification affirmed by Superior Court, contrary to previous Superior Court Opinions, asserting a new standard of review "gross abuse of discretion."

II. Where a defendant has properly requested a "lineup", may the Commonwealth avoid such lineup by asserting that a witness was unable to identify anyone and thereafter, at trial, without notice to anyone, present that witness to make an identification.

issues are not properly before this Court. Pa.R.App.P. 1115(a)(3); *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982). *Abramson v. Commonwealth, Public Utility Commission,* 489 Pa. 267, 270 n. 5, 414 A.2d 60, 62 n. 5 (1980). With regard to appellant's second issue, during his certification hearing, appellant requested a lineup to test Charlene Tyson's ability to identify him. At that time the prosecutor informed the defense that it was believed that Miss Tyson, who was not present, was unable to identify the person who shot her. The prosecutor indicated that, if it was later discovered that Miss Tyson could make an identification, the court would be so informed. On that basis the court reserved decision on the lineup request so as not to foreclose another judge on the issue.

Later at trial, before the Honorable Sandra M. Moss, defense counsel incorrectly informed the court that the lineup request was denied at the certification hearing. The court, believing the certifying judge had denied the request, refused to reverse a judge of equal jurisdiction. At trial, Miss Tyson was allowed to testify as to the identity of the person who shot her, and testified that she did glance at the shooter and that it was Derrick Rush. She indicated that she had seen appellant earlier and had recognized him as the shooter. We find no error in allowing this testimony. A defendant has no right to participate in a lineup. *U.S. v. Prescott,* 480 F.Supp. 554 (W.D.Pa.1979); *Commonwealth v. Cornish,* 471 Pa. 256, 370 A.2d 291 (1977). The grant of denial of a request for a lineup is within the sound discretion of the trial court, and such a decision will not be disturbed on review absent an abuse of discretion. *Commonwealth v. Sexton,* 485 Pa. 17, 400 A.2d 1289 (1979). It was not an abuse of discretion for the trial court to deny the requested lineup and to allow Miss Tyson to testify as to who shot her. This testimony was merely cumulative in light of the overwhelming evidence of the shooter's identity supplied by the testimony of the other victim and two eyewitnesses. Furthermore, the absence of a pretrial identification may go to the weight of the identification testimo-

388

ny, but it certainly does not render the testimony inadmissible as appellant would have us conclude. *Cornish* at 261, 370 A.2d at 293 (1977). We therefore find petitioner's second claim to be without merit.[4]

Judgment of sentence is affirmed.

STOUT, Former Justice, did not participate in the decision of this case.

4. Although the appellant frames his issues in terms of the Commonwealth's burden of proof and the denial of the lineup request, in granting this appeal this Court was concerned as to whether the certifying court had explained its reasons for certification sufficiently to allow for meaningful appellate review. *See e.g., Kent v. U.S.,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). After a careful review of the record, we are convinced that the certifying court stated its findings of nonamenability with sufficient specificity to allow our meaningful review.

The records upon which the court made its findings, although not formally admitted into evidence, were made available to all parties, and argument was made by both the defense and prosecution from the information contained in the files. While there was some informality in the manner in which the hearing was conducted, we believe that the certification of appellant was supported by the record before the court, and that the reasons for the certification were properly stated by the court.