582 A.2d 328

**COMMONWEALTH of Pennsylvania**

v.

**Michael McDONALD, Appellant.**

Superior Court of Pennsylvania.

Submitted April 23, 1990.

Filed Sept. 11, 1990.

Reargument Denied Nov. 19, 1990.

Marlene Cooperman, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before KELLY, HUDOCK and HESTER, JJ.

KELLY, Judge:

In this case we are called upon to determine whether the trial court provided an adequate statement of its reasons

for certifying the juvenile appellant to be tried as an adult. Applying the reasoning espoused by our Supreme Court in *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1989), we find the certification statement adequate, and the grounds for certification sufficient. Consequently, we affirm judgment of sentence.

## FACTS AND PROCEDURAL HISTORY

On July 4, 1988, John Sanders, age 20, was squirting the fifteen year old appellant and a friend, Paul James Oliver, with a squirt gun in the stairwell of a public housing building where he and appellant lived. Both Paul Oliver and appellant insisted that he stop squirting them. When Paul saw appellant draw a real gun from his waist band, however, Paul pleaded with appellant not to play around with the gun because it might be loaded and go off. Apparently enraged at being squirted with water, appellant aimed the gun at John Sanders, and stated coldly, "watch this." He then shot John Sanders in the neck from a distance of six feet, which sent John Sanders tumbling down the stairwell with a bullet in his neck.

John Sanders was taken to the hospital for emergency treatment. His bleeding was controlled, but the bullet was lodged too close to the spinal cord to be surgically removed. After five days in the hospital, John Sanders was sent home with a bullet still in his neck. The bullet had not been removed by the time of the trial in this case; rather, it had actually migrated even closer to John Sander's spinal cord.

A delinquency petition was initially filed against appellant charging him with aggravated assault and related offenses. A preliminary hearing was held on the petition, and a *prima facie* case was found to have been established. Subsequently, an amenability hearing was held on August 5, 1988. Appellant was certified to be tried as an adult.

On May 2, 1989, following a jury trial, appellant was convicted of aggravated assault and a firearms offense. Post-verdict motions were filed, briefed, argued, and denied.

Appellant was sentenced to the mandatory minimum term of five to ten years imprisonment. This timely appeal follows.

The sole issue raised on appeal is whether the trial court erred or abused its discretion in certifying appellant for trial as an adult. In support of this contention appellant interweaves two basic arguments: procedurally, the trial court's statement of reasons for certification was inadequate; and substantively, the trial court abused its discretion in deciding that certification was appropriate. We find the arguments to be without merit.

### I. Adequacy of the Statement of Reasons for Certification

■ Appellant contends that the juvenile court failed to provide a sufficient statement of its reasons for certifying appellant to be tried as an adult. Appellant relies upon various cases which have held that a specific statement of grounds for certification must be provided. *See Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1968); *Commonwealth v. Sanders*, 339 Pa.Super. 373, 489 A.2d 207 (1985); *Commonwealth v. Broome*, 317 Pa.Super. 1, 463 A.2d 1053 (1983); *Commonwealth v. Deppeller*, 314 Pa.Super. 368, 460 A.2d 1184 (1983); *Commonwealth v. Lux*, 299 Pa.Super. 136, 445 A.2d 185 (1982); *Commonwealth v. Stokes*, 279 Pa.Super. 361, 421 A.2d 240 (1980). We find no merit in the contention.

At the amenability hearing the juvenile court was provided with an abundance of information through the juvenile file and the arguments of prosecution and defense. The prosecution informed the court that appellant was 15 years old and had two separate outstanding charges pending at the time of the instant offense: one for possession with intent to deliver *eighty-two* packets of cocaine (while also in possession of *$720.00* cash); and a second for theft arising from an attempt with two others to steal a car (which was foiled by an officer who apprehended appellant and his co-conspirators *in flagrante delicto*). The prosecutor also noted that had the bullet fired by appellant at John Sanders

been five inches higher, this case would have been for murder rather than aggravated assault, and certification would have been automatic.

Detailed mental health reports were prepared and were included in the juvenile file reviewed by the trial court. Dr. Zanni's psychiatric report indicated the absence of any psychotic disorder which would require mental commitment. Dr. Moberg's psychological profile indicated that appellant's IQ was "low average," and that "a secure, well-structured placement" would be appropriate.

School records were also included in the juvenile file. The records revealed that appellant was a chronic truant who (not surprisingly in light of his chronic truancy) did poorly in school.

After the factual information was submitted and reviewed, the juvenile court entertained argument from both prosecution and defense. The prosecution argued for certification. It focused on the extreme seriousness *and* callousness of this offense, the presence of two outstanding arrests, and appellant's chronic truancy. The defender argued against certification focusing on the absence of prior juvenile placements, the lack of school disciplinary problems, and appellant's youth.

Upon considering the foregoing information and arguments, the juvenile court decided to grant the petition for certification. The juvenile court explained at that time:

THE COURT: The difference between this case and a case of murder where the defendant would automatically be transferred to adult court is that the complainant was probably standing a quarter inch further north then he would have been if he had been, if he had not been walking away from the defendant. Were it not for that fact obviously he would be dead. He was shot in the neck.

The question of his treatment, rehabilitation and supervision does not seem to rise in those areas. For some reason or other, where a person intends murder, the

question of rehabilitation, supervision and so forth does not become *as critical* because of what we are supervising against.

In this case, it appears that the *defendant who is a child, intended to murder a person who sprayed him with a water pistol. That would suggest that if any treatment or rehabilitation is to be accomplished there would not be much to build on.* Apparently, the young man has not had treatment, rehabilitation or supervision in the past, certainly not in the juvenile system. But, *I'm not sure that all persons, that the Commonwealth can treat all persons who come before it.*

In this case, because of the *extremely exaggerated response to the provoking act,* the Court believes that the Commonwealth of Pennsylvania would have to start at a point that it can never reach.

Any treatment, rehabilitation or whatever that was to have been done *should have been done a long time ago.* I don't think there's enough to build on and for that reason I'm allowing the Commonwealth to take this case to adult court.

(N.T. 8/5/88 at 11–13). (Emphasis added). The juvenile court expressly considered the potential for rehabilitation in the juvenile system, as well as the seriousness and callousness of the offense.

The trial court opinion, in response to appellant's post-verdict motions, expanded upon the juvenile court's statement as follows:

Lastly, defendant asserts that the certification of defendant was contrary to the law: that the certifying judge failed to consider the factors essential to certification, particularly that Judge Reynolds failed to consider that the child/defendant was amenable to rehabilitation within the jurisdiction of the juvenile court system and that the certifying judge abused his discretion in certifying defendant.

We rejected the argument. In an independent review of the record, we found that Judge Reynolds considered all

the essential factors and that his judgment was well within his discretion. There were two hearings: 1) the preliminary hearing to determine whether there was a prima facie case and 2) an amenability hearing.

The Juvenile Act, 42 Pa.C.S.A. § 6301 et seq., provides that a youth of fourteen (14) years of age or older may be tried as an adult, the burden being on the Commonwealth to prove that the child-offender be tried as an adult. *Commonwealth v. Rush*, 522 Pa. 379, 562 A.2d 285 (1989). The certifying court must determine if the evidence demonstrates:

(i) that there is a prima facie case that the child committed the delinquent act alleged;

(ii) that the delinquent act would be considered a felony if committed by an adult; and

(iii) that there are reasonable grounds to believe all of the following:

(A) That the child is not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, even though there may not have been a prior adjudication of delinquency. In determining this the court shall consider the following factors:

Age.

Mental capacity.

The degree of criminal sophistication exhibited by the child.

Previous records, if any.

The nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the Juvenile Court to rehabilitate the child.

Whether the child can be rehabilitated prior to the expiration of the Juvenile Court jurisdiction.

Probation or institutional reports, if any.

The nature and circumstances of the acts for which the transfer is sought.

Any other relevant factors.

(B) That the child is not committable to an institution for the mentally retarded or mentally ill.

(C) That the interests of the community require that the child be placed under legal restraint or discipline or that the offense is one which would carry a sentence of more than three years if committed as an adult.

42 Pa.C.S.A. § 6355(a)(4).

It is not questioned; a *prima facie* case was made out that the child/defendant committed aggravated assault, a felony of the first degree. In determining whether the child/defendant was amenable to treatment, supervision and rehabilitation in available facilities, the Commonwealth presented evidence running the gamut of the factors to be considered. The juvenile file [J-file] which indicated the age, arrest records, mental health reports and history of the defendant, N.T. 8/5/88, p. 3, showed defendant to be fifteen (15) years of age with two open cases, one for possession with intent to deliver a controlled substance and the other for theft of an automobile, the details of which were described. Detailed mental health reports consisting of Dr. Zanni's psychiatric evaluation and Mr. Moberg's psychological profile were submitted. Dr. Zanni had concluded that defendant suffered no serious psychotic disorder which required commitment treatment. Mr. Moberg indicated defendant's IQ was low average and suggested a "... secure, well-structured placement ..." for defendant. A school representative described defendant as a chronic truant who, despite all efforts, earned poor grades.

In his adjudication, Judge Reynolds notes that even though defendant was only fifteen (15) and had not been previously subjected to the rehabilitative modalities available within the juvenile system, it was too late to try any of the available programs. He questioned the defendant's "extremely exaggerated response" to being squirted with a water pistol.

Defendant's argument is that the judge's scant adjudicating remarks were insufficient and that they showed he

did not consider the factors enunciated by the statute. The fact that the court does not enunciate the factors in his finding is of no moment. The certifying judge is not required to make a formalized, conventional adjudication of findings of fact, discussion and conclusion. *See Commonwealth v. Stokes*, 279 Pa.Super. 361, 421 A.2d 240 (1980). A reviewing court may presume that the certification judge considered the evidence presented. *See Commonwealth v. Devers*, 519 Pa. 88, 101–102, 546 A.2d 12, 18 (1988). (It is presumed that a judge considered a presentence report presented to him.) *Commonwealth v. Bruner*, 388 Pa.Super. 82, 564 A.2d 1277 (1989). A certification decision which is supported by evidence on the factors to be considered is not challengeable merely because a more articulate rendition might have been made. *Cf. Commonwealth v. Sanders*, 339 Pa.Super. 373, 489 A.2d 207 (1985); *Commonwealth v. Deppeller*, 314 Pa.Super. 368, 460 A.2d 1184 (1983); *Commonwealth v. Bey*, 249 Pa.Super. 185, 375 A.2d 1304 (1977) (where the certification order contained *no* reasons).

The allegations that defendant was young enough to change, was amenable to rehabilitation, and that the other charges against him had yet to be determined is no argument that the judge abused his discretion. The mere recital of facts that might support a different result is no evidence of abuse. *See Commonwealth v. Moss*, 518 Pa. 337, 543 A.2d 514 (1988). Abuse of discretion is misapplication of the law, capricious finding, ill will, bias or prejudice. *Commonwealth v. Rush, supra; Commonwealth v. Wade*, 485 Pa. 453, 402 A.2d 1360 (1979).

Trial Court Opinion at 5–9.

We agree with the trial court, and particularly with its reliance upon our Supreme Court's decisions in *Commonwealth v. Devers* and *Commonwealth v. Wade*. Our reasons are as follows.

Appellant's argument that the statement of reasons for certification provided an inadequate explanation of the juvenile courts analysis of the statutory factors set forth at 42

Pa.C.S.A. § 6355(a)(4), echoes virtually identical arguments expressly rejected in *Commonwealth v. Devers, supra,* regarding the adequacy of the statement of a trial court's reasons for imposition of an adult criminal sentence. In *Devers,* our Supreme Court explained:

We emphatically reject, therefore, interpretations of our law in this area which call for separate, written opinions embodying exegetical thought. *Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.* A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. *Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.* This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. *It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.*

546 A.2d at 18. (Emphasis added). We find this mandate equally compelling in the context of a review of the adequacy of a juvenile court's statement of reasons for certification when the juvenile court has been presented with a detailed juvenile file and has had the benefit of argument regarding the factors relevant to the certification decision from both prosecution and defense.

We need not rest our affirmance entirely upon the compelling analogy drawn to *Devers.* Rather, our Supreme Court's prior decision in *Commonwealth v. Wade* demon-

strates that our Supreme Court had already applied *Devers*-type reasoning in an earlier juvenile certification case.

In *Wade,* our Supreme Court explained:

> Appellant argues, however, that the trial court which denied his transfer motion failed to comply with that portion of the mandate of *Kent v. United States,* [383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)] *supra,* which requires the court to give a statement of reasons justifying its decision. We believe, however, that appellant has misperceived that portion of *Kent.* As the court states:
>
> "Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review." *Kent v. United States, supra,* 383 U.S. at 561, 86 S.Ct. at 1057.

*While the trial court did not set forth any written reasons for refusing the petition for transfer at the time that decision was made, the following was contained in the trial court's opinion denying appellant's post-verdict motions:*

> "... In the present case the record is complete. There is testimony, school records and psychiatric evaluations.

The appellate court will have available to it all of the information that was available to the trial court and upon which it based its determination. The Court finds that the purpose for which the written statement is required has been accomplished and the defendant has not been denied his due process rights."

Further:

"... At the hearing on defendant's Application to Transfer, defense counsel presented psychiatric evaluations of the defendant, the defendant's high school records, his grade school records which included psychological and behavioral data and the testimony of the defendant's father who as the Administrator the Occupational, Vocational and Technical Education Section of Allegheny High School has dealt with juveniles who had been sentenced to various juvenile institutions around the state. Furthermore, since the Suppression Hearing preceded the hearing on the transfer application, the Court was fully informed as to the facts of the case. The Court was cognizant of and the record reflected that the defendant was 15½ years of age, he had not been designated as either mentally ill or retarded, the defendant could be imprisoned for more than three years as a result of his crime and the victim was a teenage friend and neighbor of the defendant. From these and other facts available to it, the Court determined that the interest and safety of the community required that the defendant be restrained and treated as an adult."

In light of the preceding quotes, we do not believe appellant was denied any due process rights by the court's failure to give written reasons for denying the transfer application at the time the decision was made.

402 A.2d at 1366. (Emphasis added). *Wade* presents compelling and materially indistinguishable precedent in support of the adequacy of the juvenile court's statement of reasons for certification in this case, given the presence of a

complete juvenile file and argument by prosecution and defense on the certification issue.

We construe *Devers* and *Wade* to espouse a consistent mandate that a juvenile court be deemed to have properly considered and to have properly weighed the relevant information supplied for its consideration, and that an appellate court may not require detailed or intricate explanations of the rationale for certification when a detailed juvenile file and arguments of counsel have been presented for consideration. Consequently, we find the statement of reasons for certification in this case *at least* adequate.

## II. *Sufficiency of the Reasons for Certification*

█ In a related argument, appellant contends that the trial court improperly focused solely on the seriousness of the crime involved in deciding to certify appellant to be tried as an adult. In support of this argument appellant quotes the juvenile court's statement of reasons for certification, (N.T. 8/5/88 at 11–13, set forth above), and cites *Commonwealth v. Greiner,* 479 Pa. 364, 388 A.2d 698 (1978). Again, we find no merit in the contention.

In *Commonwealth v. Greiner, supra,* our Supreme Court addressed two critical and inter-related issues: who had the burden of proof and production in juvenile certification hearings, and was the evidence sufficient to support certification of the juvenile to be tried as an adult in that case. Our Supreme Court ruled in Greiner's favor on both issues.

In finding that the evidence was insufficient to support certification, our Supreme Court noted that appellant had been a co-conspirator in a botched attempted rape turned aggravated assault, at age 15 with an *older* brother and an *adult.* The aggravated assault victim was the father of the intended rape victim, whose bedroom the trio of co-conspirators had broken into in error. Our Supreme Court noted that the victim had fully recovered from his stab wounds (which were not further described), and was silent as to who had actually stabbed the victim. Appellant had *no* prior record. He was an *above* average student. He enjoyed a

*stable* home life and had *no* prior disciplinary problems at home or at school. 388 A.2d at 699, 702. Finally, our Supreme Court emphasized that the county probation officer who interviewed Greiner had repeatedly recommended that Greiner be treated as a juvenile, rather than as an adult. 388 A.2d at 702. It was in this peculiar context that our Supreme Court had held that the seriousness of the offense, *alone,* could not provide the basis for certification.

Subsequently, in *Commonwealth v. Moss, supra,* our Supreme Court rejected a similar claim that juvenile court had improperly focused solely on the seriousness of the offense. In *Moss,* our Supreme Court noted that the trial court had considered not only the type of crime involved, but also the juvenile's prior criminal conduct and the inference of "criminal sophistication" which arose from a review of the facts surrounding the current offenses. 543 A.2d at 516–17.

*Moss* demonstrates that *Greiner* was not intended to eliminate, or even diminish, the significance of the *type* of offense or *circumstances* of the offense in deciding whether certification is appropriate. *Greiner,* in essence, was merely an abuse of discretion case, where *one* strong fact in favor of certification was deemed insufficient to outweigh *numerous* counterveiling facts strongly weighing against certification. In *Moss,* no such counterveiling factors were present, and so, no "gross abuse of discretion" was found. 543 A.2d at 516–17.

Again, an analogy may be drawn to *Devers.* In *Devers* our Supreme Court explained:

> Today, of course, ordering of pre-sentence reports is the practice everywhere. We are indebted to *Martin–Riggins* for teaching the judiciary that a convicted defendant cannot be sentenced on the basis of the crime alone and that a full pre-sentence report informs the sentencing procedure.

546 A.2d at 18. It may be observed that the ordering of a juvenile file (the equivalent of a pre-sentence report) is likewise the practice in juvenile certification cases, and that

we are likewise indebted to *Greiner* for teaching that certification may not be based upon the crime alone, but that the entire juvenile file is to "inform" the juvenile certification determination process. However, to say that a juvenile file or pre-sentence report is to "inform" a trial court's exercise of its sound discretion, is *not* to imply that either should blind the court to the significant import of the circumstances of the current offense or offenses.

■ Here, the *seriousness* of the offense and the *callousness* of appellant as demonstrated by the manner in which the offense was committed, were unquestionably proper considerations for the juvenile court which strongly favored certification. We note that, the offense in this case is distinguishable from that in *Greiner* in several respects. The seriousness of the threat of the victim's life in this case was clear in this case, but not in *Greiner* where our Supreme Court merely noted that the victim had fully recovered from undescribed stab wounds. Here, appellant acted individually and with extreme callousness, rather than as the junior member of a conspiracy led by an adult and an older brother. Indeed, the juvenile in *Greiner* may or may not have been involved in the actual stabbing of the intended victim's father, making *Greiner* all the more distinguishable. While not by themselves dispositive, we find no error in the juvenile court's consideration of the callousness of appellant's excessive retaliation for being squirted with water, or in its consideration of how few inches this case had been from automatic certification (*i.e.* had the shot killed John Sanders). These were plainly strong factors favoring certification of appellant to be tried as an adult.

What dispositively distinguishes this case from *Greiner*, however, is the presence of additional factors in favor of certification of appellant to be tried as an adult, and the absence of compelling factors against certification. Factors favoring certification included: appellant's outstanding prior arrests for dealing a large quantity of cocaine and for trying with two others to steal a car; his chronic truancy;

his poor school performance; and his identified need for a "secure, well-structured placement."

The factors weighing against certification hardly rose to the compelling level of those cited in *Greiner*. Appellant had never been committed to a juvenile facility, and so there was no prior failure to rehabilitate. Neither had there been a prior commitment in *Moss*. Moreover, this factor would seem to involve more the absence of an aggravating factor (*i.e.* a failed rehabilitative attempt) than the presence of a mitigating one (*e.g.* a demonstration of an actual potential for rehabilitation).

Similarly, appellant's *alleged* lack of school disciplinary problems during a period of chronic truancy is hardly a compelling mitigating circumstance. Indeed, chronic truancy may be considered a serious school disciplinary problem, by itself.

Finally, there is appellant's age, fifteen and a half. While an appropriate mitigating consideration, perhaps, it is far from being a compelling mitigating factor considering the strong counterveilling factors supporting certification.

▪ In the end, certification depends on a complex balancing of numerous factors, not the least of which is the general demeanor of the juvenile as observed by the juvenile court during the certification hearing, a factor which this Court is ill-equipped to evaluate on appeal. When a juvenile judge is provided with a comprehensive juvenile file and has the benefit of argument from prosecution and defense, both common sense and our Supreme Court's precedent require that we assume the trial court duly considered the evidence and arguments presented. In such cases, our focus on review must be limited to whether the record as a whole reveals an abuse of discretion, rather than upon the technical punctiliousness of the trial court's efforts to weave an adequate web of philosophical speculation and exegetical thought in support of its decision. *See Commonwealth v. Devers; Commonwealth v. Moss; Commonwealth v. Wade.* We find no abuse of discretion here.

*Conclusion*

Finding no error in the decision to certify appellant to be tried as an adult, we Affirm Judgment of Sentence.