COMMONWEALTH of Pennsylvania, Appellee

v.

Johnniethon BURLEY, Appellant.

Superior Court of Pennsylvania.

Argued March 12, 1998.
Filed May 20, 1998.

Marc J. Frumer, Philadelphia, for appellant.

Grady Gervino, Assistant District Attorney, Philadelphia, for the Commonwealth, appellee.

Before TAMILIA, ORIE MELVIN and BECK, JJ.

TAMILIA, Judge:

Appellant, Johnniethon Burley, challenges the judgment of sentence of five (5) to ten (10) years' imprisonment entered on January 22, 1997, after he pled guilty to nine counts of robbery,[1] one count of criminal conspiracy[2] and three counts of aggravated assault.[3,4] Appellant argues the juvenile court judge abused its discretion in transferring him from the jurisdiction of the family division to the jurisdiction of the criminal division.[5] Appellant also claims the juvenile court failed to support its decision by articulating reasons why appellant was not amenable to treatment as a juvenile.

Between March 5 and 19, 1996, appellant and his co-conspirators engaged in the following conduct. On March 5, 1996, appellant and his friends, Aaron (Marcus) Hinson, Michael Torraine and Jermaine Plummer, accosted Kevin McClinton in the 7900 block of Ardleigh Street in Philadelphia. The men approached McClinton, indicated they had a gun, robbed McClinton of $25, and then fled in a stolen minivan.[6] Just ten minutes later, appellant and his co-conspirators attempted to commit another robbery. This incident occurred when appellant and his friends approached Maurice Mitchell and Dwayne Brown at the corner of Stenton Avenue and Murdoch Road. Apparently, Hinson wanted the victims' sneakers. However, the police appeared in the area, and the robbery attempt failed.

On March 12, 1996, appellant and Hinson were driving a stolen Jeep Cherokee, when they spotted Lisa Feeley at the train station.[7] Appellant and Hinson followed Feeley to her house at 201 East Gravers Lane. As Feeley walked towards her house, appellant

---

1. 18 Pa.C.S. § 3701.

2. *Id.,* § 903.

3. *Id.,* § 2702.

4. Appellant pled guilty to three counts of aggravated assault (H.T., 11/21/96, pp. 3, 7–8); *see also* Written Guilty Plea Colloquy, 11/21/96. However, this Court's review of the bills of information (CP 9608–764 to 9608–772) indicates that appellant was not charged properly. Originally, appellant was charged with two counts of aggravated assault. The Commonwealth thereafter nol prossed one of these counts and amended a third count, from simple to aggravated assault. The amendment was made on the same day appellant pled guilty, and even if the amendment was proper, appellant was still never charged with three counts of aggravated assault, as one of the original counts had been nol prossed. These procedural irregularities, however, did not affect appellant's sentence and do not impact on the instant appeal.

5. The decision of the court to transfer or not to transfer the case is interlocutory. 42 Pa.C.S. § 6355, **Transfer to criminal proceedings,** (f) **Transfer action interlocutory.** Consequently, appellant could not appeal the juvenile court's decision until after his conviction by the criminal division.

6. Appellant knew the minivan was stolen. (Preliminary Hearing, 6/21/96, p. 14, *quoting* appellant's confession of June 6, 1996.)

7. Appellant knew the Jeep Cherokee had been stolen (H.T., 6/21/96, p. 17, *quoting* appellant's confession of June 6, 1996).

and Hinson advanced towards her, demanding that she give them her purse and the keys to her car. Hinson attempted to steal Feeley's automobile but discovered it was a stick shift, which he did not know how to operate. Hinson then jumped into the Cherokee, and the men fled the scene. Hinson later went back to the victim's home with Keenan Greenlane in order to steal the vehicle.

Also on March 12th, appellant and Hinson attempted to rob Peter Loftus. Loftus was at 346 Pelham Road when appellant and Hinson drive past him in their stolen Cherokee. When the men saw Loftus, they made a U-turn, stopped the vehicle, and confronted Loftus. One of the men simulated a weapon by holding his hand in his jacket and then said, "You know what this is—a stickup." When Loftus responded that he did not have any money, appellant and Hinson pushed Loftus to the ground, kicked his head and body, and broke his clavicle bone with a brick. After leaving the scene, appellant and Hinson apparently committed another robbery for which appellant was not charged (H.T., 6/21/96, pp. 19–20).

On March 14, 1996, appellant, Hinson and a boy named "Kev" approached Catherine Cousins as she was exiting her vehicle at 8011 Navajo Street in Philadelphia (H.T. at 24). Appellant and his co-conspirators threatened to shoot Cousins if she did not give them her handbag and the keys to her automobile. As Cousins handed the men her purse and keys, one of the men touched her breasts and vagina and said, "Isn't this great." Cousins then ran into her house, and appellant and his co-conspirators fled the scene with the stolen vehicle. Cousins' purse contained $100 in cash, as well as a checkbook and credit cards.

On March 16, 1996, appellant and Hinson followed Christian Shea back to his home at 7311 Elbow Lane, after seeing Shea driving his father's Ford Probe. When Shea pulled

into his driveway, appellant and Hinson pulled over and jumped out of the stolen Jeep Cherokee they were driving.[8] Appellant and Hinson confronted Shea, said they had a gun, and demanded the keys to the Probe. Shea would not hand over the car keys at first, and Shea's father soon appeared at the window of the house. However, appellant and Hinson took the keys and later fled with Shea's vehicle.

On March 19, 1996, appellant and Hinson arrived at the Tulpehocken Train Station, still driving the second stolen Jeep Cherokee. They subsequently approached 66-year-old Hope Sienna, who was waiting for a train. Hinson told Sienna, "Give me your money or else I'm going to shoot you." (H.T. at 21, *quoting* appellant's confession of June 6, 1996). When Sienna responded that she did not have any money, appellant and Hinson knocked her to the ground and took her pocketbook, which contained $20, as well as eyeglasses, a MAC card, personal checks, house keys and a SEPTA transpass (H.T. at 7). Appellant and Hinson then ran back to the Jeep, leaving Sienna hurt and crying on the train tracks.[9]

After returning to the Jeep, appellant and Hinson saw another lady, Beverly Cyrus, pull up in a green Dodge minivan. They then proceeded to rob Cyrus, taking her cellular telephone and $60 (H.T. at 8–9, 21–22). Following the attack, appellant and Hinson returned to the Jeep Cherokee and left the scene. At the time of the above-described events, appellant was 16 years old (DOB 12/21/79).

On June 6, 1996, the police arrested appellant. With his mother present, appellant then confessed to the above-stated crimes. On June 21, 1996, appellant executed a "Waiver of a Certification Hearing" form,[10] and the prosecutor read the facts of the cases and appellant's confession into the record.

---

8. This was the second Jeep Cherokee stolen by appellant's friends, and appellant knew that this Jeep Cherokee had been stolen (H.T. at 22, *quoting* appellant's confession of June 6, 1996).

9. Appellant knew Sienna was hurt because he saw her "lying there crying." (H.T. at 22.)

10. The form was originally captioned, "Waiver of a Preliminary Hearing," but the word "preliminary" was crossed out and the word "certification" inserted.

The June 21st hearing only established the prima facie portion of the Commonwealth's case, and both parties requested that the amenability portion be continued at a later date (H.T. at 28). On July 9, 1996, the juvenile court held an amenability hearing in order to determine whether appellant was amenable to treatment as a juvenile. Following the hearing, the court certified the case for trial in the criminal division. Appellant's petition for reconsideration was denied.

On November 21, 1996, appellant pled guilty to nine counts of robbery, three counts of aggravated assault and one count of criminal conspiracy.[11] The court then deferred sentence and ordered presentence, psychiatric and drug and alcohol evaluations. On January 22, 1997, the court sentenced appellant to a term of 5 to 10 years' imprisonment. Appellant received 5 to 10 years' imprisonment for the robbery count contained in bill CP 9608-764. The remainder of the sentences either ran concurrently with the above robbery count or were suspended. Appellant thereafter filed post-sentence motions seeking to vacate the judgment of sentence and issuance of Certification Order. The trial court denied the post-sentence motions and appellant filed this appeal.

On appeal, appellant claims the juvenile court abused its discretion in certifying his case for trial in the criminal division.[12] When reviewing a trial court's decision to certify a juvenile for trial as an adult, this Court will not disturb the juvenile court's determination, absent a gross abuse of discretion. *Commonwealth v. McGinnis*, 450 Pa.Super. 310, 675 A.2d 1282 (1996). "A

gross abuse of discretion is not demonstrated by merely reciting facts of record that would support a result contrary to the court's actual decision." *Commonwealth v. Moss*, 518 Pa. 337, 341–42, 543 A.2d 514, 516 (1988). Rather, such abuse is shown by "an exercise of manifestly unreasonable judgment based upon partiality, prejudice or ill will." *Commonwealth v. Potts*, 449 Pa.Super. 306, 312, 673 A.2d 956, 959 (1996).

In certifying a juvenile for trial as an adult, a court must evaluate numerous factors. *See* 42 Pa.C.S. § 6355, **Transfer to criminal proceedings.** Prior to the November 17, 1995 amendments which were effective March 16, 1996, the court focused on the amenability of the juvenile to treatment, supervision or rehabilitation. In determining the juvenile's amenability, the court among other factors considered the child's age, mental capacity, maturity and previous records if any. Following the amendments, the court's focus changed and in addition to the above factors, the court now evaluates whether "there are reasonable grounds to believe that the public interest is served by the transfer of the case for criminal prosecution." 42 Pa.C.S. § 6355(a)(4)(iii). The emphasis has been shifted from the rehabilitation of the child and his amenability to treatment under the juvenile system to the protection of the public and assurance that the period of incarceration and/or supervision is sufficient to deter further violence. The juvenile's amenability to treatment is now just one of seven factors in determining whether the public interest is served by transferring the case for criminal prosecution.[13]

---

11. *See* footnote 4, *supra.*

12. The Commonwealth argues that this claim is waived due to appellant's execution of a waiver of certification hearing form. However, this Court's review of the record indicates that neither appellant nor the Commonwealth intended for the amenability portion of the certification process to be waived. The form only waived the requirement that the Commonwealth present a prima facie case. If the requirement of amenability had in fact been waived, no additional amenability hearing would have been held, and the parties certainly would not have jointly requested that it be continued at a later date. Moreover, the issue of amenability is jurisdictional and, therefore, cannot be waived by appel-

lant's guilty plea. *Commonwealth v. Potts*, 449 Pa.Super. 306, 310 n. 9, 673 A.2d 956, 958 n. 9 (1996).

13. Section 6355(a)(4)(iii) reads in pertinent part:

. . .

(iii) . . . In determining whether the public interest can be served, the court shall consider the following factors:
(A) the impact of the offense on the victim or victims;
(B) the impact of the offense on the community;
(C) the threat to the safety of the public or any individual posed by the child;
(D) the nature and circumstances of the offense allegedly committed by the child;

■ Appellant's challenge to his certification for trial as an adult must fail, regardless of which of the above standards is applied. At the certification hearing, the juvenile court heard testimony from appellant's probation officer, three social workers, appellant's mother, and a school district representative. The court also heard argument from the parties and evaluated the appellant's juvenile file and psychological evaluation. After reviewing the evidence, this court finds that the juvenile court did not abuse its discretion in transferring appellant's case for prosecution in criminal proceedings. Without question, the public interest factors to be considered under the law weighed heavily in favor of certification to criminal court whether the old or new provisions of the transfer section applied.

With regard to appellant's amenability to treatment, supervision or rehabilitation, the evidence was as follows. . Appellant had no prior contact with the juvenile justice system, but his probation officer concluded that he was not amenable to treatment as a juvenile, based on the appellant's juvenile file and the nature of the crimes committed. The psychological evaluation described appellant as mature and displaying a positive attitude toward work and meeting challenges. However, testimony elicited based on the mental health assessments contained in appellant's juvenile file described him as aggressive, evasive, defensive, suspicious, hostile, and possessing assaultive tendencies. The social workers described appellant's behavior as "almost excellent" and recommended appellant for the Job Corps program. The school district representative, however, stated that appellant was enrolled at a disciplinary school and had stopped attending it. Moreover, appellant's mother acknowledged that

appellant.did not have a stable home life and that she had not been able to prevent him from spending time with "bad kids." Although the evidence of amenability alone might support a result contrary to the juvenile court's decision when considered in relation to the nature and extent of his criminal activity, we find no abuse of discretion. The weight given to the multiple factors required to be considered by the trial court cannot be overturned by this Court when supported by the record.

■ Appellant claims the juvenile court failed to articulate reasons why appellant was not amenable to treatment as a juvenile. However, this Court has stated that "[a] reviewing court may presume that the certification judge considered the evidence presented." *Commonwealth v. McDonald,* 399 Pa.Super. 250, 258, 582 A.2d 328, 331 (1990). "The certifying judge is not required to make a formalized, conventional adjudication of findings of fact, discussion and conclusion." *Id.* In this case, the juvenile court indicated its consideration of the factors relevant to the appellant's amenability to treatment as a juvenile. (Amenability Hearing, 7/9/96, p. 56.) Moreover, the court explained its decision as follows:

Defendant committed a serious and sophisticated wave of crimes "after" applying to Job Corps, and "after" he began receiving intervention from his social workers.

This is not a case where a homeless boy made a poor judgment call resulting in a first contact with the juvenile system. This is a case where an intelligent sixteen year old, with a girlfriend and child for whom he claims responsibility, in addition to a mother who loves and cares for him very much and social workers who are

(E) the degree of the child's culpability;
(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and
(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:
(I) age;
(II) mental capacity;
(III) maturity;
(IV) the degree of criminal sophistication exhibited by the child;

(V) previous records, if any;
(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitation the child;
(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;
(VIII) probation or institutional reports, if any;
(IX) any other relevant factors[.]

trying to help him, proceeded to rob, car-jack and assault innocent people over and over again with no regard for the victims, the law or the consequences.

This Court carefully considered all of the evidence presented at the hearing and appropriately certified defendant as an adult and transferred jurisdiction to criminal court.

(Slip Op., Jelin, J., 7/22/97, p. 4.) This Court concludes that the above statement is "sufficient to demonstrate that the question of certification has received the careful consideration of the juvenile court." *Commonwealth v. McGinnis,* 450 Pa.Super. 310, 316, 675 A.2d 1282, 1285 (1996).

Appellant cites *Commonwealth v. Greiner,* 479 Pa. 364, 388 A.2d 698 (1978), and argues the juvenile court impermissibly relied solely on the nature of the crimes themselves in finding that appellant should be certified as an adult. However, the record does not support this characterization of the juvenile court's decision. Furthermore, this Court has previously stated,

> *Greiner* was not intended to eliminate, or even diminish, the significance of the type of offense or *circumstances* of the offense in deciding whether certification is appropriate. *Greiner,* in essence, was merely an abuse of discretion case, where *one* strong fact in favor of certification was deemed insufficient to outweigh *numerous* countervailing facts strongly weighing against certification.

*McDonald, supra* at 263, 582 A.2d at 334 (emphasis in original). Finally, *Greiner* is plainly distinguishable from this case. In *Greiner,* the 15-year-old appellant had participated in only one criminal transaction. The appellant's probation officer recommended rehabilitation through the juvenile process, and the appellant "enjoyed a stable home life, was an above average student, and was not a discipline problem." *Greiner, supra* at 371, 388 A.2d at 702. None of these factors exist in the instant matter. To the contrary, the increasing escalation of violence and thrill seeking manifested in the crime spree by appellant and his cohorts had only one predictable result if they had not been apprehended and that is the death of a future victim or victims. In this case, the new mandate of the juvenile court, pursuant to the amendments of 1995, could not be fulfilled by the programs available through juvenile court. The Juvenile Act, section 6301(b)(2), **Purposes,** provides:

> (2) Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

For the foregoing reasons, the juvenile court did not abuse its discretion in certifying appellant for trial as an adult.

Judgment of sentence affirmed.

BECK, J., concurs in the result.