COMMONWEALTH of Pennsylvania,
Appellee

v.

Victor SAEZ, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 29, 2007.
Filed April 24, 2007.
Reargument Denied July 3, 2007.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for the Com., appellee.

BEFORE: STEVENS, KLEIN, and COLVILLE *, JJ.

* Retired Senior Judge Assigned to Superior Court.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County on April 7, 2005, following Appellant's plea of guilty to aggravated assault[1] and a violation of the Uniform Firearm Code.[2] Herein, Appellant contends that the juvenile court erred and abused its discretion by certifying him for trial as an adult. We affirm the judgment of sentence.

¶ 2 At approximately 9:30 a.m., on October 4, 2004, Eric Santana and three friends were walking to a local diner for breakfast when they were approached by Appellant. Appellant, who was fourteen years of age at the time and acquainted with Mr. Santana, began arguing with him over allegedly disrespecting Appellant's mother and firebombing Appellant's residence. N.T. 4/7/05 at 8. Appellant brandished a gun and, standing a mere foot away from Mr. Santana, fired at him, striking him in the right forearm and shattering a bone in his wrist. As Mr. Santana turned and fled, Appellant fired three more shots in his direction, missing Mr. Santana and innocent bystanders.

¶ 3 Appellant was arrested and charged with attempted murder, aggravated assault, simple assault, terroristic threats, recklessly endangering another person, possessing an instrument of crime, and three violations of the Uniform Firearm Act. The Commonwealth sought to certify Appellant to be tried as an adult. Thereafter, a preliminary hearing was held on December 1, 2004, after which the court found that the Commonwealth established a *prima facie* case on all charges.

¶ 4 On December 13, 2004, following the parties' presentation of evidence and argument as to whether Appellant was amenable to treatment in the juvenile system, the court certified him to stand trial as an adult. Pursuant to protest by Appellant and an accompanying request for an extension of time to explore possible treatment facilities, and over objection of the Commonwealth, the court granted a short continuance in the matter.

¶ 5 When court reconvened on December 22, 2004, Appellant's counsel stated she had located treatment facilities that were willing to accept Appellant for a long-term course of treatment. The Commonwealth argued that the court's December 13, 2004 determination should remain in effect. The court agreed and directed Appellant to stand trial as an adult.

¶ 6 On April 7, 2005, Appellant entered a negotiated plea of guilty to aggravated assault and carrying a firearm without a license. After the plea was accepted, the court imposed a negotiated sentence of, *inter alia*, an eleven and one-half (11 ½) to twenty-three (23) month term of imprisonment, followed by a ten (10) year term of probation. Appellant then filed the present appeal.

¶ 7 Herein, Appellant presents the following question for review:

Did not the juvenile court err as a matter of law and abuse its discretion in certifying appellant, a fourteen year-old with no delinquency history, for trial as an adult where the juvenile court ignored overwhelming evidence demonstrating appellant's amenability to rehabilitation in the juvenile system, relying instead on the nature of the charged crime and the wholly improper factor that appellant maintained his innocence rather than admitted guilt?

1.  18 Pa.C.S.A. § 2702.

2.  18 Pa.C.S.A. § 6106.

Brief of Appellant at 3 (answer of trial court omitted).[3]

■ ¶ 8 When evaluating the certification decision of the juvenile court, we are mindful that:

The Superior Court must not upset the certification decision of a juvenile court unless the court has either failed to provide 'specific reasons for its conclusion that the juvenile is not amenable to treatment' or 'the court committed a gross abuse of discretion.' The existence of facts in the record that would support a contrary result does not demonstrate a gross abuse of discretion. To rise to a level of gross abuse of discretion, the court rendering the adult certification decision must have misapplied the law, exercised unreasonable judgment, or based its decision on ill will, bias, or prejudice.

*Commonwealth v. Jackson,* 555 Pa. 37, 42, 722 A.2d 1030, 1032 (1999) (internal citations omitted).

¶ 9 The transfer of juvenile matters to an adult court for prosecution is governed by 42 Pa.C.S.A. § 6355, which provides, in pertinent part, as follows:

§ 6355. **Transfer to criminal proceedings**

(a) **General rule.**—After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances, of this Commonwealth, the court before hearing the petition on its merits may rule that this chapter is not applicable and that the offense should be prosecuted, and transfer the offense, where appropriate, to the division or a judge of the court assigned to conduct criminal proceedings, for prosecution of the offense if all of the following exist:

(1) The child was 14 or more years of age at the time of the alleged conduct.

. . . .

(4) The court finds:

(i) that there is a prima facie case that the child committed the delinquent act alleged;

(ii) that the delinquent act would be considered a felony if committed by an adult;

(iii) that there are reasonable grounds to believe that the public interest is served by the transfer of the case for criminal prosecution. In determining whether the public interest can be served, the court shall consider the following factors:

(A) the impact of the offense on the victim or victims;

(B) the impact of the offense on the community;

(C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and

(G) whether the child is amenable to treatment, supervision or rehabili-

---

**3.** We note that, in *Commonwealth v. Sanders,* 814 A.2d 1248 (Pa.Super.2003), the defendant entered a plea of guilty to numerous charges and later, on appeal to this Court, challenged the trial court's denial of his request to decer- tify the matter to juvenile court. This Court opined that "[t]he issue of certification between the juvenile and criminal divisions is jurisdictional and, therefore, not waivable." *Id.* at 1250.

tation as a juvenile by considering the following factors:

    (I) age;

    (II) mental capacity;

    (III) maturity;

    (IV) the degree of criminal sophistication exhibited by the child;

    (V) previous records, if any;

    (VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;

    (VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;

    (VIII) probation or institutional reports, if any;

    (IX) any other relevant factors, and

    (iv) that there are reasonable grounds to believe that the child is not committable to an institution for the mentally retarded or mentally ill.

42 Pa.C.S.A. § 6355(a).

¶ 10 In *Commonwealth v. Burley,* 715 A.2d 430 (Pa.Super.1998), this Court asserted that:

Prior to the November 17, 1995 amendments [to the Juvenile Act] which were effective March 16, 1996, the court focused on the amenability of the juvenile to treatment, supervision or rehabilitation. In determining the juvenile's amenability, the court among other factors considered the child's age, mental capacity, maturity and previous records if any. Following the amendments, the court's focus changed and in addition to the above factors, the court now evaluates whether 'there are reasonable grounds to believe that the public interest is served by the transfer of the case for criminal prosecution.' The emphasis has been shifted from the rehabilitation of the child and his amenability to treatment under the juvenile system to the protection of the public and assurance that the period of incarceration and/or supervision is sufficient to deter further violence. The juvenile's amenability to treatment is now just one of seven factors in determining whether the public interest is served by transferring the case for criminal prosecution.

715 A.2d at 433 (internal citation and footnote omitted).

■ ¶ 11 In the case *sub judice,* Appellant contends that the court erred and abused its discretion in certifying him to stand trial as an adult. He argues that in reaching this erroneous determination, the court ignored overwhelming evidence that he was amenable to treatment and, instead, focused on the nature of the crimes charged. Appellant concedes, however, that, since he was fourteen years of age at the time of the offenses and used a deadly weapon in commission thereof, the burden was on him to establish by a preponderance of the evidence that retaining the case in juvenile court served the public interest and that he was amenable to treatment as a juvenile. *See* 42 Pa.C.S.A. § 6355(g)(1)(i).

¶ 12 At the December 13, 2004 certification hearing, Appellant presented the testimony of Probation Officer Balcer, who, by his own admission, conducted a cursory review of Appellant's Behavioral Health Evaluation prior to voicing his recommendation in the matter.[4] Mr. Balcer opined that, based primarily on Appellant's age and his successful completion of a prior deferred adjudication for a drug charge, he believed Appellant was amenable to treat-

---

4. Mr. Balcer stated that he had just received Appellant's Behavioral Health Evaluation that morning and, as a result, had not produced an impact statement. N.T. 12/13/04 at 4.

ment in the juvenile system. When asked by Commonwealth counsel, Catherine Thurston, Esquire, whether he was aware that, while awaiting deferred adjudication on the drug charge, Appellant tested positive for drugs, Mr. Balcer responded, "No, I'm not aware of that." N.T. 12/13/04 at 8.

¶ 13 In addition, when further questioned as to whether he was aware of the impact Appellant's crime had on the victim, the following exchange transpired:

A .[Mr. Balcer]. On the victim?

Q [Attorney Thurston]. Yes.

A. No, I don't.

Q. So you haven't incorporated that into your analysis, the crime itself, the impact on the victim?

A. No. I take into consideration the juvenile's age and what the Juvenile Court system does for juveniles, and it's our intention to rehabilitate juveniles at a young age. Because of that—I feel as a result of that nobody has died. I understand that there is a victim and that his life may be very well impacted by this.

*Id.* at 9–10.

¶ 14 As evidenced by the foregoing exchange, Mr. Balcer did not consider the impact of the offense on the victim. Also, although Mr. Balcer indicated that he had considered the impact the crime had on the community, he went on to concede that he was unaware that "this incident occurred at 9:30 in the morning on a crowded street in Philadelphia[.]" *Id.* at 11–12.

¶ 15 Mr. Balcer noted that he had his "own personal feeling about juveniles and their ability to be rehabilitated[,]" *Id.* at 10, and acknowledged that he never rec-

ommended a defendant be certified as an adult when that individual was fourteen years old. *Id.* at 12.

¶ 16 Appellant also presented the testimony of his mother, who testified, *inter alia*, that Appellant resided with her in September; however, he only did so for three weeks, because she asked him to move out.

¶ 17 After hearing the testimony, the court disagreed with Appellant's position that he was amenable to treatment in the juvenile system and certified him to stand trial as an adult. In reaching this determination, the court opined that, "I don't believe we are capable of dealing with juveniles who have access to guns and who have the propensity to use them on the streets of Philadelphia." *Id.* at 20. The court added that Appellant's Behavioral Health Evaluation talks about the lack of structure and discipline in Appellant's home,[5] *Id.* at 21, as well as his isolation from supportive adults. *Id.* at 22. Furthermore, following the presentation of testimony on December 22, 2004, the court, noting that it considered the opinion of individuals from the facilities willing to accept Appellant for treatment, stated that: "[I]n view of the crime that's charged and his maturity to accept responsibility, I believe that he should be tried as an adult and that he is not amenable to the juvenile system." N.T. 12/22/04 at 7.

■ ¶ 18 Although Appellant argues that the court impermissibly relied solely on the nature of the crimes themselves in finding that he should be certified as an adult, the record does not support this characterization of the court's decision.[6]

---

5. A review of Appellant's Behavioral Health Evaluation indicates that he accumulated "over 104 unexcused absences [from school] 'in the 04 year.' " Behavioral Health Evaluation at 3.

6. To the extent Appellant contends that the court erroneously disregarded the opinion and position of Probation Officer Balcer, we are mindful that:

Rather, the record indicates that the court considered the background of Appellant and concluded that no alternative treatment facilities would be sufficient. In addition to the impact of the offense on the victim and the community, the threat to public safety caused by Appellant, the nature and circumstances of the crimes committed, and Appellant's culpability, the following facts were present in this case:

- The use of a gun by Appellant;

- Mr. Santana's wrist bone was shattered;

- Appellant's lack of concern to the risk the shooting posed to others on the public street;

- Appellant felt no empathy for Mr. Santana, admitting in his Behavioral Health Evaluation that he shot Mr. Santana because he was not sorry for what he had done.

- The lack of structure and discipline in Appellant's home;

- Appellant's mother had asked him to leave the home;

- Appellant accumulated over 104 unexcused absences from school in the prior year; and

- Appellant had a prior deferred adjudication for a drug charge and, during that period of time, he tested positive for drugs.

¶ 19 In reviewing the determination reached by the court, we note that:

In the end, certification depends on a complex balancing of numerous factors, not the least of which is the general demeanor of the juvenile as observed by the juvenile court during the certification hearing, a factor which this Court is ill-equipped to evaluate on appeal. When a juvenile judge is provided with a comprehensive juvenile file and has the benefit of argument from prosecution and defense, both common sense and our Supreme Court's precedent require that we assume the trial court duly considered the evidence and arguments presented. In such cases, our focus on review must be limited to whether the record as a whole reveals an abuse of discretion. . . .

*Commonwealth v. McDonald,* 399 Pa.Super. 250, 582 A.2d 328, 335 (1990).

¶ 20 For the foregoing reasons, we find that the trial court did not abuse its discretion and properly considered all factors necessary to determine whether Appellant should have been certified to stand trial as an adult.[7] Consequently, we affirm the judgment of sentence.

¶ 21 Affirmed.

---

[A] probation officer's report is only one factor that a court must consider when determining whether a minor is amenable to treatment as a juvenile. The Juvenile Act places no greater or lesser weight on the probation officer's report than any of the other statutory factors before a juvenile court.

*Jackson,* 555 Pa. at 45, 722 A.2d at 1033 (internal citation omitted). We find that the trial court did not err by weighing other factors more heavily than the testimony of Probation Officer Balcer as to Appellant's amenability to treatment in the juvenile system.

7. We note that Appellant failed to carry the burden of proving his amenability to treatment in the juvenile system. *See* 42 Pa.C.S.A. § 6355(g)(1)(i).