552 N.W.2d 317 (1996)
In the Interest of J.A.G., A Child.
Stephen DAWSON, Petitioner and Appellee,
v.
John GUERRERO, Martha Castanon, and J.A.G., Respondents and Appellants.
Criminal No. 960008.
Supreme Court of North Dakota.
June 27, 1996.
*318 Stephen R. Dawson (argued), Assistant State's Attorney, Fargo, for petitioner and appellee.
Brian W. Nelson (argued), of Nelson Law Office, Fargo, and Robin L. Olson (appearance), of Olson Law Office, Grand Forks, for respondents and appellants.
MARING, Justice.
J.A.G., a juvenile, has appealed[1] an order transferring prosecution of criminal charges against him from juvenile court to the district court under § 27-20-34(1)(c), N.D.C.C. We affirm.
On the evening of November 15, 1995, sixteen-year-old J.A.G. was riding in a car with five other juveniles. J.A.G. and the other juveniles were arrested after it was alleged one of them killed Cheryl Tendeland that evening with a sawed-off shotgun while she was sitting in a car in West Fargo, North Dakota.
*319 Under § 27-20-34(1)(c), N.D.C.C., the State moved to transfer prosecution from juvenile court to the district court for trial of J.A.G. as an adult, and filed a second amended petition alleging in part:
"Count 1: That the juvenile is alleged to be delinquent in that he was involved in committing the unlawful act of CONSPIRACY TO COMMIT ARMED ROBBERY in violation of Section 12.1-06-04 and 12.1-22-01, N.D.C.C. in that on or about the evening of November 15, 1995, the above-named juvenile ... agreed with other juveniles to commit robbery and any one or more of such persons did an overt act to effect an objective of the conspiracy including but not limited to: 1) travelled together in an automobile to the city of West Fargo, ND, on the late evening of November 15, 1995; 2) possessed a sawed off shotgun and ammunition for same; 3) located and observed a potential victim of the robbery in the city of West Fargo; 4) left the confines of said automobile and walked towards the intended victims while armed with a sawed off shotgun; 5) fired a firearm during the course of said offense; 6) aided others and facilitated the escape from the scene of this offense.
* * * * * *
"Count 2: That the juvenile is alleged to be delinquent in that he was involved in committing the unlawful act of CRIMINAL STREET GANG CRIME, in violation of Sections 12.1-06.2-02 and 12.1-03-01 of the North Dakota Century Code as amended, in that on or during the evening of November 15, 1995, the above-named juvenile ... committed or attempted to commit conspiracy to commit robbery at the direction of or in association with a criminal street gang as charged in Count One above, with intent to promote, further, or assist in the affairs of a criminal gang;...."
The juvenile court transferred prosecution of Count 1 to the district court under § 27-20-34(1)(c), N.D.C.C., and transferred prosecution of Count 2 to the district court under § 27-20-34(4), N.D.C.C. J.A.G. appealed.
Section 27-20-34(1)(c), N.D.C.C., authorizes transferring the prosecution of some offenses from juvenile court to the district court, providing in part:
"1. After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense... the court before hearing the petition on its merits shall transfer the offense for prosecution to the appropriate court having jurisdiction of the offense if:
* * * * * *
"c. (1) The child was fourteen or more years of age at the time of the alleged conduct;
"(2) A hearing on whether the transfer should be made is held in conformity with sections 27-20-24, 27-20-26, and 27-20-27;
"(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and the child's parents, guardian, or other custodian at least three days before the hearing; and
"(4) The court finds that there are reasonable grounds to believe that:
"(a) The child committed the delinquent act alleged;
"(b) The child is not amenable to treatment or rehabilitation as a juvenile through available programs;
"(c) The child is not treatable in an institution for the mentally retarded or mentally ill;
"(d) The interests of the community require that the child be placed under legal restraint or discipline; and
"(e) If the child is fourteen or fifteen years old, the child committed a delinquent act involving the infliction or threat of serious bodily harm.
* * * * * *
"4. The transfer terminates the jurisdiction of the juvenile court over the child with respect to the delinquent acts alleged in the petition...."
*320 Under § 27-20-56, N.D.C.C., this court hears an appeal under the Uniform Juvenile Court Act "upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." "We reexamine the evidence in a manner similar to the former procedure of trial de novo." In Interest of M.D.N., 493 N.W.2d 680, 683-84 (N.D.1992).

I.
J.A.G. did not receive the second amended petition, containing Count 2, which was not in the original petition, until the day of the hearing and contends that Count 2 should not have been addressed because he did not have adequate notice. At the beginning of the transfer hearing, J.A.G.'s counsel asked "that this be continued to allow us proper time to prepare." The juvenile court reserved ruling at that time. After the hearing, and after the juvenile court ordered transfer of Count 1, the court ruled that, under § 27-20-34(4), N.D.C.C., the transfer of Count 1 "terminates the jurisdiction of the Juvenile Court over this Respondent with respect to any remaining delinquent acts alleged in the Petition." The juvenile court, therefore, transferred Count 2, as well as Count 1. J.A.G. did not provide us with any citations to relevant authority or any supportive reasoning. We are, therefore, not persuaded that the juvenile court erred in concluding that its transfer of Count 1 required the transfer of Count 2 as well.
In this case, Count 2 was intertwined with Count 1. Both involved the same facts and events. Evidence proving one also tended to prove the other. We express no view on the correctness of the juvenile court's determination that transfer of Count 1 terminates the juvenile court's jurisdiction "with respect to any remaining delinquent acts alleged in the Petition." Without proper notice and proof on each count of a multi-count petition, transfer of prosecution on one count might not require transfer of "remaining delinquent acts alleged" in the other counts, if the counts are unrelated.

II.
J.A.G. contends that the juvenile court erred in finding reasonable grounds under § 27-20-34(1)(c)(4)(a), N.D.C.C., to believe that he committed the alleged delinquent act of conspiracy to commit armed robbery. Section 12.1-06-04(1), N.D.C.C., provides:
"A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy. The agreement need not be explicit, but may be implicit in the fact of collaboration or existence of other circumstances."
"An agreement or understanding may be shown by the conduct of the parties." 4 Charles E. Torcia, Wharton's Criminal Law § 726 (14th ed.1981). To be guilty of conspiracy, one need only "believe that he was participating in an agreement with another to engage in criminal conduct, manifested by some overt act." State v. Rambousek, 479 N.W.2d 832, 835 (N.D.1992).
The standard of "reasonable grounds" in § 27-20-34(1)(c)(4), N.D.C.C., "is equivalent to `probable cause.'" In Interest of T.M., 512 N.W.2d 441, 443 (N.D.1994). "Probable cause [and, therefore, reasonable grounds] is a minimal burden of proof," which is met if "there is a definite probability based on substantial evidence." In Interest of M.D.N., supra, 493 N.W.2d at 684. "`[S]ubstantial evidence'" is "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Application of Bank of Rhame, 231 N.W.2d 801, 811 (N.D.1975), quoting Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 619-20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140 (1966).
Detective Gregory Warren testified: 1) Cheryl Tendeland died of a shotgun wound to the head while sitting in a car at about 10:35 p.m. on November 15, 1995; 2) Pat Tendeland gave him the license number of a car; 3) the car was owned by J.A.G.'s mother; and 4) Moorhead police stopped the car at about 11:42 p.m. on November 15, 1995, removed a sawed-off shotgun and shells *321 from the car, and took the juveniles in it into custody.
Warren also testified that J.G. told him: 1) J.G. and the other juveniles left J.A.G.'s home on November 15, 1995, they went driving and they took the shotgun with them; 2) the shotgun, which had been stolen, "belonged to the group or the gang," and was stored at J.A.G.'s residence; 3) when they saw the Tendeland vehicle, R.M. stopped the car and B.G. and M.C. got out; 4) when B.G. got out of the car, "he was either going to steal the car or rob the people." 5) B.G. told R.M. to "Pull the car up ahead, pull ahead;" 6) B.G. "then steps off the curb, walks towards the vehicle, points the gun, and there is a blast. Shortly after the blast from the shotgun, the Tendeland vehicle goes racing by;" 7) after the shotgun was fired, J.A.G. said: "Don't leave them. Wait for them;" 8) B.G. and M.C. got back in the car; 9) J.A.G. was present when B.G. left J.A.G.'s residence with the shotgun to commit an armed robbery on November 14; 10) B.G. brought the loot from the November 14 robbery back to J.A.G.'s residence; and 11) after the November 14 robbery, B.G., J.G., and J.A.G. again went out on November 14 in J.A.G.'s mother's car, looking for other people to rob.
Warren's testimony was evidence "a reasonable mind might accept as adequate to support a conclusion," Application of Bank of Rhame, 231 N.W.2d at 811, that J.A.G. believed "he was participating in an agreement with another to engage in criminal conduct, manifested by some overt act," State v. Rambousek, 479 N.W.2d at 835. Based on our de novo review of the record and giving appreciable weight to the findings of the juvenile court, we conclude that the juvenile court did not err in finding reasonable grounds to believe that J.A.G. committed the delinquent act of conspiracy to commit armed robbery.

III.
J.A.G. contends that the juvenile court erred in finding "reasonable grounds to believe" that J.A.G. "is not amenable to treatment or rehabilitation as a juvenile through available programs." Section 27-20-34(1)(c)(4)(b), N.D.C.C. Under § 27-20-34(3), N.D.C.C., a juvenile court considers the following factors in determining a child's amenability to treatment and rehabilitation:
"a. Age;
"b. Mental capacity;
"c. Maturity;
"d. Degree of criminal sophistication exhibited;
"e. Previous record;
"f. Success or failure of previous attempts to rehabilitate;
"g. Whether the juvenile can be rehabilitated prior to expiration of juvenile court jurisdiction;
"h. Any psychological, probation, or institutional reports;
"i. The nature and circumstances of the acts for which the transfer is sought;
"j. The prospect for adequate protection of the public; and
"k. Any other relevant factors."
Two witnesses, J.A.G. and Stacy Kray, testified about J.A.G.'s amenability to treatment or rehabilitation.
J.A.G. testified: 1) he was 16 years old; 2) he had prior delinquency adjudications and had received probation and placement in facilities for minors in Minnesota; 3) treatment for abuse of controlled substances or alcohol "could be helpful, even though I don't use them regularly;" 4) he had previously been offered alcoholism treatment by his probation officer, but did not take it: "I was supposed to go to a class once a week in school, but I didn't like school that much. I never really went to school, so, therefore, I never really went;" and 5) "I am prepared to take treatment, but I am not saying that I am fully really willing to."
Stacy Kray, a probation officer with a college degree in social work and criminal justice, who is familiar with treatment programs available in Minnesota, testified: 1) Kray began supervising J.A.G. on his probation in October 1993; 2) J.A.G. received student assistance programming for self-esteem, truancy, and behavioral problems through the counseling department of Moorhead High School; 3) from December 1993 through February 1994, J.A.G. received "Crisis In-Home Therapy, where a therapist comes into *322 the home ... one to three times per week and meets with the family and tries to develop a plan and find out how things could be changed to make the home situation better;" 4) from March 1994 through August 1994, J.A.G. was at Valley Lake Boys Home, a group home for adolescent boys with severe behavioral problems; 5) from February 1995 through May 1995, J.A.G. was at Thistle Dew Camp, a correctional work camp for boys with severe behavioral difficulties, which has group and individual therapy; 6) before J.A.G. went to Thistle Dew, a therapist again provided in-home services; 7) J.A.G. "refused, for all practical purposes, to participate" in the outpatient individual and family counseling services provided him; 8) J.A.G. did very well at Valley Lake Boys Home and Thistle Dew Camp, proving "he has the capabilities to perform appropriately while under some structure," but when released, "he did not want to continue with those appropriate behaviors or chose not to;" 9) in both placements, J.A.G. indicated "he would like to continue with his gang affiliations;" 10) "If [J.A.G.] were to come over on the charges that he's been charged with, we would definitely have to look at, No. 1, public safety and public protection, and more than likely look at a program commitment to the Commissioner of Corrections at Sauk Centre. That is a program, in our opinion, that is the highest level of supervision;" and 11) Minnesota has no "other placements that would benefit him. He's received already what any other placement would be able to give him."
The foregoing testimony by J.A.G. and Kray is evidence "a reasonable mind might accept as adequate to support a conclusion," Application of Bank of Rhame, 231 N.W.2d at 811, that J.A.G. is not amenable to treatment or rehabilitation as a juvenile through available programs. Based on our de novo review of the record and giving appreciable weight to the findings of the juvenile court, we conclude that the juvenile court did not err in finding reasonable grounds to believe that J.A.G. was not amenable to treatment or rehabilitation as a juvenile through available programs.

IV.
J.A.G. contends that the juvenile court erred in placing on him the burden of proving amenability to treatment. Section 27-20-34(2), N.D.C.C., places the burden of proving amenability to treatment or rehabilitation on the child in specified instances:
"The burden of proving reasonable grounds to believe that a child is amenable to treatment or rehabilitation as a juvenile through available programs is on the child in those cases in which the alleged delinquent act involves the offense of manslaughter, aggravated assault, robbery, arson involving an inhabited structure, or escape through the use of a firearm, destructive device, or other dangerous weapon or in those cases where the alleged delinquent act involves an offense which if committed by an adult would be a felony and the child has two or more previous delinquency adjudications for offenses which would be a felony if committed by an adult."
In all other cases, the burden of proof is on the State.
One of the touchstones for an effective appeal on any proper issue is that the matter has been appropriately raised in the trial court so that the trial court could intelligently rule on it. Beavers v. Walters, 537 N.W.2d 647 (N.D.1995). The Explanatory Note, Rule 51, N.D.R.Crim.P., states:
"In essence, the only requirement necessary to preserve a point on appeal is the objection, based on proper grounds, to the evidence or other matters put before the court for consideration.... The purpose of making the objection to the ruling known is to enable the court to correct its error, if any, or to enable the opposing party to correct an alleged defect."
At the beginning of the hearing, J.A.G.'s attorney objected "to the statute on the grounds of constitutionality; that is, has an implied shift of the burden of proof to the defendant." The State responded: "I don't see any shift in burden. We are not proceeding under subparagraph (2), that is, where the burden would shift, because this is not one of the crimes described in that section." The juvenile court ruled: "... the *323 Court would find thatdeny the motion at this time." After the juvenile court announced its finding of probable cause to believe that J.A.G. committed the delinquent act alleged, the court stated:
"The Court will further find that the alleged delinquent act involves an offense which involves the infliction of a threat or of serious bodily harm.
"This, under the statute, transfers the burden of proof regarding the issue of amenability to treatment as a juvenile upon the defendant."
J.A.G.'s attorney did not object at that point and proceeded to try the issue of amenability, calling J.A.G. as a witness. After concluding his examination of J.A.G., J.A.G.'s attorney said:
"Well, Your Honor, I realize this statute shifts the burden to us to prove that [J.A.G.] would be amenable to treatment or rehabilitation.
* * * * * *
"I'm wondering whether or not you can show his amenability to treatment without access to the psychological records of the other institutions."
The State indicated at the beginning of the hearing that it had the burden of proof on the issue of amenability and went on to prove that J.A.G. is not amenable to treatment or rehabilitation as a juvenile through available programs. In light of J.A.G.'s vague objection at the beginning of the hearing, his failure to object when the amenability-to-treatment portion of the hearing began, and his later agreement with the court's statement on the issue, it is questionable whether J.A.G. preserved this issue for review. However, we need not decide the issue. Regardless of which party had the burden of proof on the issue of amenability to treatment, the evidence was clearly sufficient, as we have already concluded, to support the juvenile court's finding of reasonable grounds to believe that J.A.G. is not amenable to treatment or rehabilitation as a juvenile through available programs.

V.
J.A.G. contends that the juvenile court's transfer order should be reversed because the court failed to make a finding in accordance with § 27-20-34(1)(c)(4)(d), N.D.C.C.:
"(4) The court finds that there are reasonable grounds to believe that:
* * * * * *
"(d) The interests of the community require that the child be placed under legal restraint or discipline;"
Although we encourage juvenile courts to make specific findings on all matters addressed in § 27-20-34(1)(c)(4), N.D.C.C., we conclude that the court's failure to make a specific finding under § 27-20-34(1)(c)(4)(d), N.D.C.C., is not fatal to the transfer order.
In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), a District of Columbia statute placed sixteen-year-old Kent in the "exclusive jurisdiction" of the juvenile court, but provided that a judge "may, after full investigation," transfer him to the court which would have jurisdiction if he were an adult. In transferring Kent to adult court, the judge conducted no hearing, made no findings, recited no reasons, and did not refer to any of Kent's motions. The United States Supreme Court held that procedure insufficient:
"[W]e conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel."
383 U.S. at 557, 86 S.Ct. at 1055, 16 L.Ed.2d at 95. Kent does not require the statement of reasons to be formal:
"We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of `full investigation' has *324 been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review."
383 U.S. at 561, 86 S.Ct. at 1057, 16 L.Ed.2d at 97.
The provisions in § 27-20-34(1)(c), N.D.C.C., were designed to meet the Kent requirements. See Comment to § 34, Uniform Juvenile Court Act. Courts in Pennsylvania, a state which also has adopted the Uniform Juvenile Court Act, do not require specific findings on each factor listed in the statute. A court certifying a juvenile for trial as an adult need not make findings of fact, but must provide a statement of reasons sufficient to show that the question of certification received the court's careful consideration. Commonwealth v. Stokes, 279 Pa.Super. 361, 421 A.2d 240 (1980). "The fact that the court does not enunciate the [statutory] factors in his finding is of no moment." Commonwealth v. McDonald, 399 Pa.Super. 250, 582 A.2d 328, 331 (1990). "A reviewing court may presume that the certification judge considered the evidence presented." Id. A juvenile court is "deemed to have properly considered and to have properly weighed the relevant information supplied for its consideration, and ... an appellate court may not require detailed or intricate explanations of the rationale for certification when a detailed juvenile file and arguments of counsel have been presented for consideration." Id. 582 A.2d at 333-34.
Here, the State argued to the juvenile court: "Society needs protection from this type of crime and this type of person." Kray testified that if J.A.G. were again referred to Kray's office in Minnesota, "we would definitely have to look at, No. 1, public safety and public protection, and more than likely look at a program ... [with] the highest level of supervision." The statements and findings in the juvenile court's transfer order reflect careful consideration of the issues. We presume that the juvenile court considered and weighed the evidence and argument presented to it. Under the circumstances presented, we will not reverse the juvenile court's transfer order for failing to specifically enunciate its finding on one of the several statutory factors for consideration.

VI.
Much of the evidence presented by Detective Warren consisted of hearsay testimony based upon information acquired in the course of his investigation. In his reply brief, J.A.G. stated that he had objected to the juvenile court's ruling at the beginning of the hearing that the North Dakota Rules of Evidence do not apply to juvenile court transfer hearings, argued that the evidence rules "should apply in full force," and requested a new hearing. J.A.G. provided no citations to authority or supportive reasoning. The argument is, therefore, without merit. We note, however, that the issue was presented in In Interest of C.R.M., 552 N.W.2d 324 (N.D.1996), where we held that the rules of evidence do not apply in juvenile court transfer hearings.
Affirmed.
VANDE WALLE, C.J., and MESCHKE, NEUMANN and SANDSTROM, JJ., concur.
NOTES
[1] This is a companion appeal to Criminal No. 960010, In Interest of C.R.M., 552 N.W.2d 324 (N.D.1996).