In the Interest of J.K.M., a Minor Child.

Paul OGDEN, Petitioner and Appellant,

v.

J.K.M., Tim Moe, and Arliss Moe,
Respondents and Appellees.

Criminal No. 960052.

Supreme Court of North Dakota.

Dec. 20, 1996.

Wade G. Enget, State's Attorney, Stanley, for petitioner and appellant.

Carl O. Flagstad, Jr., of Flagstad & Farhart, Minot, for respondents and appellees.

NEUMANN, Justice.

The State appeals the juvenile court's order refusing to transfer J.K.M., a juvenile, from juvenile court to district court under N.D.C.C. § 27–20–34(1)(b)(4).[1] We affirm.

J.K.M. was born July 4, 1978. In early July 1995, J.K.M.'s friend, Jane Doe, began dating J.K.M.'s ex-boyfriend of fourteen months. On July 20, 1995, J.K.M. invited Jane Doe to her house to give her a birthday present. Jane Doe arrived, but J.K.M. could not find the gift. As Jane Doe was leaving the house, J.K.M. attacked Jane Doe. J.K.M. stabbed Jane Doe with a sword and then tackled her, jumping on her repeatedly. J.K.M. was seventeen years of age. Jane Doe suffered stab wounds to her back and leg, a punctured lung, a broken diaphragm, three fractured ribs, spleen damage, and a severed tendon on her right ring finger. Jane Doe was hospitalized for eight days and has undergone various surgeries to repair her spleen, lung, and tendons in her hand.

J.K.M. was admitted to the Adolescent Mental Health Unit at UniMed hospital on July 21, 1995. She remained in the hospital until August 9, 1996, under the care of Dr.

---

1. Section 27–20–34, N.D.C.C., was amended during the 1995 Legislative Assembly. Due to the amendments, the language originally contained in subsection (1)(b)(4), is now located at subsection (1)(c)(4).

Grogan, a medical doctor and psychiatrist. Except for the incident on July 20, 1995,- J.K.M. had no history of violence or delinquency. Before the incident, J.K.M. showed signs of deep depression, including a twenty-pound weight loss and withdrawal from her family and friends. In the hospital, J.K.M. had no memory of the incident. J.K.M. was diagnosed with a single major depressive episode, unspecified.

On July 21, 1995, the State petitioned the court to transfer J.K.M. from juvenile court to district court under N.D.C.C. § 27-20-34(1)(b)(4). The juvenile court held a transfer hearing on January 2 and 3, 1996. At the hearing, various witnesses testified to the events before the attack, the events of the attack, and J.K.M.'s rehabilitation. The medical testimony suggested J.K.M. was not a danger to the community, and could be adequately treated under her current therapy program within three to five years.

The juvenile court found, because J.K.M. has no prior record or past history of violent activity, she is responding well to her treatment, and she is not considered a danger to society, that J.K.M. could be treated and rehabilitated as a juvenile. The State appeals the juvenile court's order refusing to transfer J.K.M., arguing J.K.M. is not amenable to treatment in the juvenile court system.

■ "The right to appeal is a jurisdictional matter which we may consider sua sponte." *Johnson v. King,* 325 N.W.2d 254, 256 (N.D. 1982). In juvenile matters, N.D.C.C. § 27-20-56(1) governs the right to an appeal stating "[a]n aggrieved party ... may appeal from a final order, judgment, or decree of the juvenile court to the supreme court...."

■ This court has never addressed appealability of an order denying transfer of a juvenile to adult court. Thus, we find it helpful to consider what other jurisdictions with similar statutes have done. *See* N.D.C.C. § 1-02-13. North Dakota's juvenile law was adopted from the Uniform Juvenile Court Act. Other states that have adopted the Uniform Juvenile Court Act include Georgia and Pennsylvania.

Pennsylvania has dealt directly with this issue. In *In Interest of McCord,* 445 Pa.Super. 137, 664 A.2d 1046, 1048-49 (1995), a Pennsylvania juvenile court denied transfer of a juvenile to criminal court and the State appealed. The Pennsylvania appellate court, although recognizing the action was interlocutory, determined an order denying the transfer of a juvenile to adult court was immediately appealable because it effectively terminated the proceeding against the juvenile in criminal court. Based on similar reasoning, we find this matter appealable under N.D.C.C. § 27-20-56(1). We note, in *In Interest of C.L.L.,* 507 N.W.2d 900, 901 (N.D. 1993), we dismissed an appeal from an order confirming the referee's recommendation of adjudication prior to disposition because if at the disposition hearing the child was discharged, the appeal would be moot. However, we distinguish the result of the court's ruling in this case. Here, the juvenile court's decision to maintain jurisdiction over J.K.M. has permanently terminated the State's opportunity to criminally prosecute J.K.M., without a possibility to appeal or reverse the decision in the future. Therefore, we find the issue appealable as a final order under N.D.C.C. § 27-20-56(1).

■ Finding this is an appealable order, we examine the matter on its merits. Appellate review of a juvenile matter is similar to the procedure of trial de novo. *In Interest of M.D.N.,* 493 N.W.2d 680, 683-84 (N.D.1992). According to N.D.C.C. § 27-20-56(1), N.D.C.C., we examine "the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court."

■ In 1995, the North Dakota legislature amended the section of the Juvenile Court Act governing juvenile transfers to adult court. The effective date of this amendment was August 1, 1995. Because the incident on July 20, 1995, occurred eleven days prior to this date, the juvenile court applied the pre-amendment law. The juvenile court's application of this law was not questioned below and has not been appealed and thus, we also apply the law in effect before the amendments. Prior to the amendments, N.D.C.C. § 27-20-34(1)(b)(4) governed the disposition

of a juvenile transfer to adult court. Under N.D.C.C. § 27–20–34(1)(b)(4), a court may transfer a juvenile to adult court if there are reasonable grounds to believe:

"(a) The child committed the delinquent act alleged;

(b) The child is not amenable to treatment or rehabilitation as a juvenile through available programs;

(c) The child is not treatable in an institution for the mentally retarded or mentally ill;

(d) The interests of the community require that the child be placed under legal restraint or discipline; and

(e) If the child is fourteen or fifteen years old, the child committed a delinquent act involving the infliction or threat or serious bodily harm."

"The standard of 'reasonable grounds' ... 'is equivalent to "probable cause." ' In Interest of T.M., 512 N.W.2d 441, 443 (N.D.1994). 'Probable cause and, therefore, reasonable grounds is a minimal burden of proof,' which is met if 'there is a definite probability based on substantial evidence.' " In the Interest of J.A.G., 552 N.W.2d 317, 320 (N.D.1996) (quoting In Interest of M.D.N., 493 N.W.2d 680, 684 (N.D.1992)).

The State claims the juvenile court erred because reasonable grounds exist to believe J.K.M. is not amenable to treatment through the juvenile system under N.D.C.C. § 27–20–34(1)(b)(4)(b). Significantly, J.K.M. was seventeen years old at the time of the incident. If J.K.M. remains in the juvenile system, the juvenile court can retain jurisdiction over her only until she reaches the age of twenty. N.D.C.C. § 27–20–36(6). The state argues this is not enough time to rehabilitate her.

Although J.K.M. is being treated for her depression, the State argues there is no guarantee that J.K.M.'s treatment will be concluded within three years. Because her crime was very vicious and violent, the State believes it would be in the interest of the community to transfer her to adult court.

■ Prior to the 1995 amendments to the Juvenile Court Act, this court had referred to other jurisdictions for factors to be considered in determining amenability to treatment. In Interest of M.D.N., 493 N.W.2d at 685.[2] Specifically, we referred to the Pennsylvania legislature which adopted ten factors in determining the amenability to treatment. These factors included:

"-Age.

— Mental capacity.

— Maturity.

— The degree of criminal sophistication exhibited by the child.

— Previous record, if any.

— The nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the Juvenile Court to rehabilitate the child.

— Whether the child can be rehabilitated prior to the expiration of the Juvenile Court jurisdiction.

— Probation or institutional reports, if any.

— The nature and circumstances of the acts for which the transfer is sought.

— Any other relevant factors."

42 Pa.C.S.A. § 6355(a)(4)(iii)(A).

Applying those factors to the record in this case, we believe J.K.M. is amenable to treatment.

---

2. In 1995, our legislature enacted similar guidelines:

"In determining a child's amenability to treatment and rehabilitation, the court shall consider and make specific findings on the following factors:

a. Age;

b. Mental capacity;

c. Maturity;

d. Degree of criminal sophistication exhibited;

e. Previous record;

f. Success or failure of previous attempts to rehabilitate;

g. Whether the juvenile can be rehabilitated prior to expiration of juvenile court jurisdiction;

h. Any psychological, probation, or institutional reports;

i. The nature and circumstances of the acts for which the transfer is sought;

j. The prospect for adequate protection of the public; and

k. Any other relevant factors."

N.D.C.C. § 27–20–34(3).

Before the incident, J.K.M. was described as a very calm, pleasant person, and a good student. J.K.M has no criminal record and this incident was the first time she has shown any delinquent behavior. Although her attack on Jane Doe was violent, nothing in the record suggests the attack had any criminal sophistication. Her doctors attribute the incident to a major depression, one that resulted in a violent outburst, but that can be treated.

Dr. Grogan, J.K.M.'s primary psychiatrist, testified that after six months of treatment, J.K.M. poses no risk to society. He suggested J.K.M. should be in therapy for three to five years, but stressed the therapy is only needed to ensure all of J.K.M.'s problems are worked out, not because she is a threat to the community. Specifically, Dr. Grogan noted that both J.K.M. and the people close to her are now aware of her depression, and would likely recognize the onset of a future occurrence. Dr. Grogan testified there is little concern of another violent outburst because J.K.M. and her family are on notice of her potential illness, J.K.M. is on medication, and she is in therapy. In fact, Dr. Grogan feared that if J.K.M. went to jail, it would only increase the likelihood that she will have violent or antisocial behavior in the future.

Dr. Brandt, who assisted Dr. Grogan in treating J.K.M., also testified that J.K.M. is not a risk to herself or a danger to the community. He agreed the treatment should be completed within three to five years, and further stated that J.K.M. was not sophisticated or a criminal. "I certainly don't see her as being a bad person, a criminal. I think this is an isolated incident. I would highly doubt that anything like this would ever happen again." Dr. Hanlon, a psychologist who had not personally met J.K.M., but who had reviewed her record as a consultant for the North Dakota Youth Correctional Center, agreed with the other doctors' diagnosis and suggested treatment should take less than three years.

In addition to the medical testimony, all of the evidence reveals J.K.M. is responding very well to her current program. J.K.M. is in an outpatient setting. She is under twenty-four-hour parental supervision and is monitored by Carole Maki, her probation officer. She is in a home schooling program sanctioned by the New Town School District and is expected to graduate on schedule. Since the incident, J.K.M. has been extremely cooperative in her treatment. She has followed the twenty-four-hour supervision requirement, complied with all of her counseling, and properly taken her medication. All of the people involved with J.K.M., including her doctors, her family and her probation officer, are pleased with J.K.M.'s progress and current rehabilitation program.

Although we note there is a possibility that J.K.M.'s treatment could take longer than three years, in which case she would no longer be under the jurisdiction of the juvenile court, the medical testimony and evidence indicate J.K.M. is amenable to treatment within three years. Accordingly, we do not believe the State has proven there are reasonable grounds to believe J.K.M. is not amenable to treatment.

We, therefore, affirm the juvenile court's order refusing to transfer J.K.M. from juvenile court to district court under N.D.C.C. § 27–20–34(1)(b)(4).

VANDE WALLE, C.J., and MARING and MESCHKE, JJ., concur.

SANDSTROM, Justice, dissenting.

Because the majority has misapplied the law and has erroneously found the facts, I dissent. Because the State has met its burden, I would reverse the juvenile court and order J.K.M. transferred from juvenile court to stand trial as an adult on the charge of attempted murder.

I

The majority correctly concludes the juvenile court's order is appealable, correctly identifies our standard of review as de novo, and correctly identifies the pre-August 1, 1995, juvenile law as applying to this case. That law provides for transfer to adult court if there are *reasonable grounds to believe:*

"(a) The child committed the delinquent act alleged;

(b) The child is not amenable to treatment or rehabilitation as a juvenile through available programs;

(c) The child is not treatable in an institution for the mentally retarded or mentally ill;

(d) The interests of the community require that the child be placed under legal restraint or discipline; and

(e) If the child is fourteen or fifteen years old, the child committed a delinquent act involving the infliction or threat of serious bodily harm."

N.D.C.C. § 27–20–34(1)(b)(4) (1995).

"Reasonable grounds" are equivalent to "probable cause." *In Interest of J.A.G.*, 552 N.W.2d 317, 320 (N.D.1996); *In Interest of T.M.*, 512 N.W.2d 441, 443 (N.D.1994); *In Interest of A.D.L.*, 301 N.W.2d 380, 383 (N.D. 1981). Reasonable grounds, or probable cause, is less than a preponderance of the evidence. *In Interest of M.D.N.*, 493 N.W.2d 680, 690 (N.D.1992) (Levine, J., concurring in the result) (" 'probable cause' is all the State is required to establish in a transfer proceeding and not a preponderance of evidence or clear and convincing evidence"); *Svedberg v. Stamness*, 525 N.W.2d 678, 681 n. 2 (N.D. 1994) (preponderance of the evidence is "a more stringent standard" than reasonable grounds in context of disorderly conduct); *State v. Zachodni*, 466 N.W.2d 624, 629 (S.D. 1991) ("evidence supporting a probable cause determination ... need not establish ... proof by preponderance"). There can simultaneously be reasonable grounds, or probable cause, to believe something both is and is not the case. *See T.M.* at 443 (probable cause is met when " 'there is a definite probability based on substantial evidence' " (quoting *M.D.N.*)); *J.A.G.* at 320 (relevant evidence which adequately supports a conclusion is "substantial evidence"); *J.A.G.* (the burden of proving probable cause is minimal).

A basic logical flaw in the reasoning of the defense, the juvenile court, and the majority is illustrated by J.K.M.'s issue II: "Whether the trial court appropriately held there are reasonable grounds to believe that J.K.M. is amenable to treatment or rehabilitation as a juvenile through available programs, when expert testimony supports amenability?"

But the legal issue *is not* whether there are reasonable grounds to believe J.K.M. *is* amenable, the legal issue *is* whether there are reasonable grounds to believe J.K.M. *is not* amenable to treatment.

The juvenile court found: "That J.K.M. is amenable to treatment or rehabilitation as a juvenile through available programs." Even if there were reasonable grounds (or even a preponderance of the evidence) to believe J.K.M. is amenable to treatment, it does not mean reasonable grounds are lacking to believe the opposite; thus, a fundamental flaw in the juvenile court's analysis.

Similarly, the majority writes: "[W]e believe J.K.M. is amenable to treatment." And: "Although we note there is a possibility that J.K.M.'s treatment could take longer than three years, in which case she would no longer be under the jurisdiction of the juvenile court, the medical testimony and evidence indicate J.K.M. is amenable to treatment within three years." The majority erroneously concludes its finding of amenability to treatment precludes the existence of reasonable grounds to believe the opposite.

The juvenile court and the majority have misapplied the law.

II

In finding J.K.M.'s actions were *caused* by major depression, the juvenile court and the majority have fallen victim to "psychobabble" at odds with the very reference work cited as authority.

The juvenile court wrote:

"The Court acknowledges that there are two virtually diametrically opposed scenarios which would explain the incident before the Court:

1. One is that J.K.M.'s unprovoked attack on Michele was the act of a cold-blooded killer. That the act was intentional and premeditated; and that, therefore, J.K.M. should be transferred to adult court whereby upon a finding of guilt, J.K.M. could be subjected to adult corrections which could include long-term incarceration, not only as a punishment for her

wrongful act, but also to protect society from a dangerous person; and that J.K.M. should lose certain of her civil rights and be deprived of certain future employment rights which accompany adult convictions for a crime of this serious nature.

2. A second theory is that J.K.M.'s unprovoked attack on Michele was a single-isolated episode which was the result of serious depression. That with counseling and therapy (and anti-depression medications), J.K.M. can be treated and rehabilitated; and that with such counseling, treatment, and medications, she is no longer a danger or threat to society; and the likelihood of J.K.M. being involved in further acts of a violent nature is low.

This Court finds that the evidence supports the second theory; that is that J.K.M.'s actions were the result of serious depression."

Although Dr. Grogan testified the attempted murder was caused by major depression on the part of J.K.M., his testimony is inconsistent with the reference work Grogan called the "Bible."

Q I note, and I'm looking at the DSM–IV, 1994 Edition....

A [Grogan:] That's—I would not argue with the DSM–IV, no.

Q Okay. This—the DSM–IV is—I hate to use this term—is the Bible.

A It's the Bible. It's put together by the American Psychiatric Association.... I wouldn't argue with the DSM–IV."

The DSM–IV, technically American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: DSM–IV (4th ed.1994), was the authoritative basis used in making the diagnosis of "single major depressive disorder episode." A review of the volume nowhere reflects violence toward others as a feature of "major depressive disorder"—not a diagnostic feature, not a specifier, and not an associated feature. Simply put, the "bible" used in making the "diagnosis" is completely inconsistent with the claim that depression caused J.K.M. to attempt to murder Michele.

The premise of the juvenile court's and the majority's findings falls, and thus falls their analysis.

### III

There is no doubt J.K.M. committed a violent act; she attempted to murder Michele. There is clear evidence of premeditation. J.K.M. lured Michele to her house by telling her she had a birthday present for her, even though J.K.M. had told another she was planning to "kick her ass." After Michele came to J.K.M.'s house, J.K.M. kicked, hit, and stabbed Michele in the back three times with a 33–inch blade. The facts of this vicious and violent attack establish reasonable grounds to believe society needs to be protected.

The State has met its burden of establishing reasonable grounds to believe each of the requisite elements are present. J.K.M. should be bound over to adult court to be tried for attempted murder.