1997 ND 9

In the Interest of A.E., A Child.

Stephen R. DAWSON, Petitioner
and Appellee,

v.

Hignonon ESPARZA, Terry Ysaquirre,
Respondents,

and

A.E., a Child, Respondent and Appellant.

Criminal No. 960079.

Supreme Court of North Dakota.

Jan. 16, 1997.

Stephen R. Dawson (argued), Assistant State's Attorney, Fargo, for petitioner and appellee.

James F. Lester (argued), Fargo, for respondents and appellant.

## OPINION

MARING, Justice.

[¶ 1] A.E. and five other juveniles were arrested after Cheryl Tendeland was shot and killed while sitting in her car in West Fargo, North Dakota on the evening of November 15, 1995. A petition was filed in Cass County Juvenile Court alleging A.E. was a delinquent child because he had committed conspiracy to commit armed robbery on or about November 15, 1995, in the Tendeland incident. The State filed a motion to transfer jurisdiction to Cass County District Court, and after a hearing, the court granted the motion. It is from this order that A.E. appeals.

[¶ 2] A.E. argues on appeal that the State did not meet its burden of persuasion on the question of whether there existed reasonable grounds to believe A.E. committed the act of conspiracy to commit armed robbery. A.E. also claims that the State failed to meet its burden of persuasion that A.E. is not amenable to treatment as a juvenile.

[¶ 3] This court's review of a juvenile court's order is similar to a trial de novo. *In Interest of T.M.*, 512 N.W.2d 441, 442 (N.D. 1994). We independently review the evidence, and our review is not limited to a determination of whether the juvenile court's findings are clearly erroneous. *Id.* This standard is also set forth in N.D.C.C. § 27–20–56 as follows: "The appeal must be heard by the supreme court upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court."

[¶ 4] N.D.C.C. § 27–20–34(1)(c) authorizes transfer of some offenses from juvenile court to the district court for prosecution, providing in part:

1. After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense ... the court before hearing the petition on its merits shall transfer the offense for prosecution to the appropriate court having jurisdiction of the offense if:

\* \* \* \* \* \*

c. (1) The child was fourteen or more years of age at the time of the alleged conduct;

(2) A hearing on whether the transfer should be made is held in conformity with sections 27–20–24, 27–20–26, and 27–20–27;

(3) Notice in writing of the time, place, and purpose of the hearing is given to the child and the child's parents, guardian, or other custodian at least three days before the hearing; and

(4) The court finds that there are reasonable grounds to believe that:

(a) The child committed the delinquent act alleged;

(b) The child is not amenable to treatment or rehabilitation as a juvenile through available programs;

(c) The child is not treatable in an institution for the mentally retarded or mentally ill;

(d) The interests of the community require that the child be placed under legal restraint or discipline; and

(e) If the child is fourteen or fifteen years old, the child committed a delinquent act involving the infliction or threat of serious bodily harm.

[¶ 5] N.D.C.C. § 27–20–34(1)(c)(4) establishes "reasonable grounds" as the standard for waiver of jurisdiction and transfer of the offense from juvenile court to district court. N.D.C.C. § 1–02–03 provides that "[t]echnical words and phrases and such others as have acquired a particular and appropriate meaning in law, or as are defined by statute, must be construed according to such peculiar and appropriate meaning or definition." The meaning of "reasonable grounds"

is equivalent to "probable cause." *In Interest of M.D.N.*, 493 N.W.2d 680, 684 (N.D. 1992); *see also Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). "Probable cause is a minimal burden of proof ... [I]f it appears to be so or there is a definite probability based on substantial evidence, the standard of probable cause has been met." *M.D.N.*, at 684 (citation omitted). The State has the burden of persuasion on the issue of whether there are reasonable grounds to believe that the child committed the delinquent act. *Id.; In Interest of A.D.L.*, 301 N.W.2d 380, 383 (N.D. 1981).

## I

▉ [¶ 6] A.E. contends that the juvenile court erred in finding reasonable grounds under N.D.C.C. § 27–20–34(1)(c)(4)(a) to believe that A.E. committed the delinquent act of conspiracy to commit armed robbery. N.D.C.C. § 12.1–06–04(1) provides:

A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and anyone or more of such persons does an overt act to effect an objective of the conspiracy. The agreement need not be explicit, but may be implicit in the fact of collaboration or existence of other circumstances.

To be guilty of conspiracy, one need only "believe that he was participating in an agreement with another to engage in criminal conduct, manifested by some overt act." *In Interest of J.A.G.*, 552 N.W.2d 317, 320 (N.D.1996), (quoting *State v. Rambousek*, 479 N.W.2d 832, 835 (N.D.1992)).

[¶ 7] At the transfer hearing, detective Gregory Warren of the Fargo police department testified that Cheryl Tendeland died of a shotgun wound to the head while sitting in a car in West Fargo on the night of November 15, 1995; Pat Tendeland gave the officers at the scene the license number of a car which was later located; Moorhead police officers arrested four juvenile occupants of the car when it was located; police officers also recovered a sawed-off shotgun and shells from the vehicle; and Detective Warren later interviewed J.G., one of the occupants of the car. Detective Warren testified that during this interview, J.G. told him A.E. was present in the vehicle on the night of November 15, 1995, during the shooting; when they saw the Tendeland vehicle, the driver stopped the car and B.G. and M.C. got out with the shotgun; soon after this, a shot was heard, and J.G., A.E. and the other passengers yelled for the driver to stop the car; A.E. was present the night prior to the shooting when B.G. left with the same shotgun and returned with several items obtained in a robbery; and A.E. was present when the spoils from that robbery were divided.

[¶ 8] After Detective Warren's testimony, the trial court concluded "there is a greater likelihood than not that the offense of conspiracy to commit armed robbery occurred ... [and that] the juvenile in this matter [A.E.] participated in the offense." Based on our de novo review of the record and giving appreciable weight to the juvenile court's findings, we hold that the State met its burden of persuasion and established reasonable grounds to believe that A.E. committed the delinquent act of conspiracy to commit armed robbery.

## II

▉ [¶ 9] A.E. next contends that the juvenile court erred in finding A.E. is not amenable to treatment or rehabilitation as a juvenile through available programs. We do not agree.

▉ [¶ 10] In 1995, the North Dakota Legislature enacted amendments to N.D.C.C. § 27–20–34 by 1995 N.D. Sess. Laws, Ch. 124, § 15 effective August 1, 1995. One of those amendments was codified as N.D.C.C. § 27–20–34(2), which provides:

(2) The burden of proving reasonable grounds to believe that a child is amenable to treatment or rehabilitation as a juvenile through available programs is on the child in those cases in which the alleged delinquent act involves the offense of manslaughter, aggravated assault, robbery, arson involving an inhabited structure, or escape involving the use of a firearm, destructive device, or other dangerous weapon or in those cases where the alleged

delinquent act involves an offense which if committed by an adult would be a felony and the child has two or more previous delinquency adjudications for offenses which would be a felony if committed by an adult.

This amendment was enacted in response to the increase in violent crime by juveniles, with punishment as its purpose. The legislative history of this amendment reveals the intent was to shift the burden of proof of the element of amenability to treatment from the State to the child in cases in which the alleged delinquent act involved specific enumerated crimes. *See* Hearing on S.B. 2264, before the Joint Senate House Judiciary Committee, 54th Legislative Assembly (1995), (January 25, 1995, testimony of Heidi Heitkamp, Attorney General.) Thus, in a transfer hearing which involves a crime enumerated in subsection (2), the child has the burden of persuasion that there are reasonable grounds to believe she/he is amenable to treatment or rehabilitation through available programs.[1] N.D.C.C. § 27–20–34(2). We hold subsection (2) creates a limited exception to the general rule set forth in subsection (1)(c)(4)(b), N.D.C.C. § 27–20–34 that the State has the burden of persuasion that there are reasonable grounds to believe that the child is not amenable to treatment or rehabilitation as a juvenile through available programs. N.D.C.C. § 27–20–34(2); N.D.C.C. § 1–02–07.

[¶ 11] The burden of persuasion is "reasonable grounds to believe" that the child is amenable to treatment. N.D.C.C. § 27–20–34(2). As previously noted, the meaning of "reasonable grounds" is equivalent to probable cause. *In Interest of M.D.N.*, 493 N.W.2d 680, 684 (N.D.1992). "We have held that if it appears to be so or there is a definite probability based on substantial evidence, the standard of probable cause has been met." *Id.* (citation omitted).

[¶ 12] The transfer statute sets forth the factors that the court shall consider in determining a child's amenability to treatment and rehabilitation. N.D.C.C. § 27–20–34(3). These factors include age, mental capacity, maturity, degree of criminal sophistication exhibited, previous record, success or failure of previous attempts to rehabilitate, whether the juvenile can be rehabilitated prior to expiration of juvenile court jurisdiction, any psychological, probation, or institutional reports, the nature and circumstances of the acts for which the transfer is sought, the prospect for adequate protection of the public, and any other relevant factors. *Id., see In Interest of M.D.N.*, 493 N.W.2d 680, 685 (N.D.1992).

[¶ 13] A.E. was 16 years of age at the time of the Tendeland incident. The juvenile court has jurisdiction of A.E. until age 18. N.D.C.C. § 27–20–02(1). Under N.D.C.C. § 27–20–36(6), the juvenile court may retain jurisdiction over a juvenile until age 20, if the child was adjudicated delinquent before age 18. A.E. is charged with conspiracy to commit armed robbery, a class A felony, a serious crime which resulted in a murder. The record supports that A.E. has a previous record and commitments, including careless driving, motor vehicle tampering, and minor consuming offenses. In order to carry his burden of persuasion that he is amenable to treatment, A.E. relied on the report of the North Dakota Youth Correction Center (NDYCC). The agreed upon purpose of the assessment and evaluation at the NDYCC was "to address and determine the issues and amenability to treatment of this juvenile through the court system."

[¶ 14] We conclude the juvenile court properly found A.E. did not meet his burden of persuasion that there were reasonable grounds to believe that he was amenable to treatment or rehabilitation as a juvenile through available programs.

[¶ 15] Connie Wheeler of the Division of Juvenile Services for the North Dakota Department of Corrections testified as to A.E.'s amenability to treatment as a juvenile. Ms. Wheeler was involved in the preparation of

---

1. It should be noted that there was some confusion in this case by the State over whether it had the burden of persuasion on this issue requiring it to go forward with the proof. However, it was of no consequence in this case because the State relied on the same North Dakota Youth Correctional Center report to prove A.E. is *not* amenable to treatment as a juvenile, as relied on by A.E. to prove he *is* amenable to treatment.

the report of NDYCC, which was introduced into evidence at the transfer hearing. This report was the only evidence A.E. offered on the issue of amenability to treatment. Wheeler testified the report states "[W]e are unable to absolutely and categorically state that [A.E.] is not amenable to treatment as a juvenile, because he has yet to be involved in any specific treatment programs on a protracted basis." The report also states that A.E. scored the highest rating possible in five out of eight evaluated behavioral areas; had a short criminal record with no history of violent crimes; and communicated with his family as often as the program would allow.

[¶ 16] The State emphasizes that the conclusion reached by the preparers of the NDYCC report, based on the report as a whole, is that A.E. is not amenable to treatment as a juvenile. The State argues that one is unable to get an "accurate picture by just taking a paragraph here and a piece there" of the report. The report states that A.E. has had a previous adjudication as a delinquent child; that A.E. has stated he "needed some help with his gang problem"; and that A.E. met nine of the twenty criteria for classification as a gang member in North Dakota. Based on these findings A.E. would be found to be a "gang member."

[¶ 17] The juvenile court's question to the NDYCC was whether A.E. is likely or unlikely to respond to treatment programs in the juvenile system. In response, the NDYCC report states: "The majority of our findings imply that he is much more unlikely to respond to such programs." The report notes that although A.E.'s observable behavior had been very positive at Pine Cottage, the cottage counselors were skeptical about A.E.'s behavior. They indicated it seemed overly conforming and quite manipulative. The personality tests indicated that A.E. appears to be "immature" and "well-defended (defensive)." The evaluation team expressed concern over A.E.'s denial of culpability. We recognize, as the team did, A.E. is in somewhat of a "Catch–22" position, but the report makes it clear that A.E. not only denied culpability in the pending offenses, but also in most of the other offenses for which he has been arrested in the past.[2] *Morstad v. State,* 518 N.W.2d 191 (N.D.1994). According to the report there were no indications on either of the psychological tests of any psychiatric or mental disturbance. The consulting psychologist's main diagnosis for A.E. was that of "conduct disorder, unspecified."

[¶ 18] The report indicates the "Strategies for Juvenile Supervision" (SJS) interview and assessment resulted in A.E. being classified as a "Limit Setting" (LS) type student. "Limit Setting" kids are considered to be the most delinquent and sophisticated type of the four major groups in the "SJS" system. The "SJS" supervision guide recommends that "LS" kids often need long term secure placement and they need to be closely monitored and supervised. The report notes "It is often considered more important to protect society from them than it is to attempt to rehabilitate them, as they usually do not respond to traditional treatment approaches." The report, however, states "(w)e cannot state categorically that all of the characteristics pertaining to Limit Setting students are also specific characteristics of [A.E.], rather these traits generally apply to students that fall into that classification."

[¶ 19] Finally the report states that the division of Juvenile Service "Classification/Risk Assessment" resulted in A.E. receiving a score which would place him in the category requiring "secure placement". The report points out, however, that the assessment is based upon a presumption that A.E. would be adjudicated for the offense of conspiracy to commit armed robbery.

[¶ 20] The report, in conclusion, states the entire evaluation team present unanimously

---

2. A.E. did not raise a due process argument pursuant to the Fourteenth Amendment of the United States Constitution. Issues not raised before the trial court, even constitutional issues, will not be addressed on appeal. *City of Fargo v. Bommersbach,* 511 N.W.2d 563, 566 (N.D.1994). This court may notice "[o]bvious errors or defects affecting substantial rights" not brought before the trial court but such power "is exercised cautiously and only in exceptional circumstances where a serious injustice has been suffered by the defendant." *Id.* (citations omitted). *See* Rule 52(b), N.D.R.Crim.P.; *but see State v. Pendergrast,* 340 N.W.2d 454 (N.D.1983) where this court held it has the power to raise a basic constitutional issue *sua sponte.*

determined "that most of our findings and assessment results appear to indicate that [A.E.] is unlikely to be amenable or receptive to treatment within the juvenile system."

[¶ 21] We conclude that the report of the North Dakota Youth Correctional Center does not establish reasonable grounds to believe that A.E. is amenable to treatment.

[¶ 22] We wish to express, however, our concern with both the child and the State relying on the same report. Justice Levine in her concurring opinion in *In Interest of M.D.N.*, initially expressed this concern:

> "I knew it was trouble when the State and the child relied upon the same expert testimony in support of their respective positions. The moral of this case, from the child's point of view, is to secure an expert witness who, like Dr. Ulrich, will study, evaluate and visit with the child enough to offer the essential answers to several critical questions but who, unlike Dr. Ulrich, is sufficiently informed on the requirements of N.D.C.C. § 27–20–34(1)(b)(4)(b) and on the essential components of the opinion he must give in order for the child to prevail. . . ."

*In Interest of M.D.N.*, 493 N.W.2d 680, 689 (N.D.1992)(Levine, J., concurring). We further note that a report such as the NDYCC report, which was the only evidence submitted in this case other than Connie Wheeler's testimony, would not necessarily be controlling in a case in which other evidence was submitted.

[¶ 23] Based on our de novo review of the juvenile court record, A.E. has failed to prove there is a definite probability of amenability to treatment based on substantial evidence. The order of the Juvenile Court is affirmed.

[¶ 24] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

SANDSTROM, Justice, concurring.

[¶ 25] I agree with the majority; the juvenile has a threshold burden, under N.D.C.C. § 27–20–34(2), of establishing reasonable grounds to believe the juvenile is amenable to treatment. I agree with the majority; A.E. has not met that burden.

[¶ 26] I write separately to note, if the juvenile establishes reasonable grounds to believe the juvenile is amenable to treatment, the juvenile would still be subject to being bound over if the prosecution establishes, under N.D.C.C. § 27–20–34(1)(c)(4)(b), reasonable grounds to believe the juvenile "is *not* amenable to treatment." *See* ¶ 4 of the majority opinion.

[¶ 27] We have noted, "reasonable grounds" are equivalent to "probable cause." *In Interest of J.A.G.*, 552 N.W.2d 317, 320 (N.D.1996); *In Interest of T.M.*, 512 N.W.2d 441, 443 (N.D.1994); *In Interest of A.D.L.*, 301 N.W.2d 380, 383 (N.D.1981). Reasonable grounds, or probable cause, is less than a preponderance of the evidence. *In Interest of M.D.N.*, 493 N.W.2d 680, 690 (N.D.1992) (Levine, J., concurring in the result) (" 'probable cause' is all the State is required to establish in a transfer proceeding and not a preponderance of evidence or clear and convincing evidence"); *Svedberg v. Stamness*, 525 N.W.2d 678, 681 n. 2 (N.D.1994) (preponderance of the evidence is "a more stringent standard" than reasonable grounds in context of disorderly conduct); *State v. Zachodni*, 466 N.W.2d 624, 629 (S.D.1991) ("evidence supporting a probable cause determination . . . need not establish . . . proof by preponderance"). There can simultaneously be reasonable grounds, or probable cause, to believe something both is and is not the case. *See T.M.* at 443 (probable cause is met when " 'there is a definite probability based on substantial evidence' " (quoting *M.D.N.*)); *J.A.G.* at 320 (relevant evidence which adequately supports a conclusion is "substantial evidence").

[¶ 28] Under the new law, when the other factors are met, if there is substantial evidence both of amenability to treatment and of non-amenability to treatment, the juvenile is to be bound over.

[¶ 29] NEUMANN, J., concurs.

MESCHKE, Justice, concurring.

[¶ 30] I think that the more recent language of NDCC 27–20–34(2) and the old

language of NDCC 27–20–34(1)(c)(4)(b) hopelessly and senselessly conflict on who must prove what about a juvenile's amenability to treatment.